S91P0670. POTTS v. THE STATE.
(410 SE2d 89)

Bell, Justice.

This is a death penalty case. Jack Howard Potts, whose death sentence for the murder of Michael Priest in Forsyth County was affirmed in *Potts v. State,* 259 Ga. 96 (376 SE2d 851) (1989), has been convicted in Cobb County for the kidnapping with bodily injury of Michael Priest and sentenced to death for this offense also. This is Potts' appeal from the Cobb County conviction and death sentence.[1]

The facts of Potts' multi-county criminal episode are essentially as set forth in *Potts v. State,* id. Potts kidnapped Michael Priest in Cobb County and murdered Priest in Forsyth County by a single gunshot wound to the head as Priest begged for his life. Potts was arrested in south Georgia after a high speed chase and a shootout with police.

1. In the first division of his brief,[2] Potts raises double jeopardy issues, relying primarily on the recently-decided United States Supreme Court opinion in *Grady v. Corbin,* 495 U. S. \_\_\_ (110 SC 2084, 109 LE2d 548) (1990). He contends that since the bodily-injury element of his Cobb County conviction for kidnapping with bodily injury is based on the same conduct — shooting Michael Priest in the head — that led to his murder conviction in Forsyth County, he cannot be convicted both of murder in Forsyth County and kidnapping with bodily injury in Cobb County. He also argues that he was originally convicted in Cobb County of simple kidnapping and cannot be

---

[1] As noted in *Potts v. State,* supra, 259 Ga. at 96, fn. 1, Potts originally was convicted and sentenced to death over a decade ago. He was convicted in Cobb County for the kidnapping with bodily injury of Michael Priest and in Forsyth County for the murder of Michael Priest. Both convictions were affirmed on direct appeal as were the death sentences imposed in each case. *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978). His Forsyth County death sentence and his Cobb County conviction were set aside in federal habeas proceedings. *Potts v. Zant,* 734 F2d 526 (11th Cir. 1984). There have been interlocutory appeals in both cases. See *Potts v. State,* supra, 259 Ga. at 96, fn. 1.

[2] Potts has enumerated 75 errors. In his argument these enumerations are grouped together into 16 divisions purporting to cover all 75 enumerations of error. From a comparison of the enumerations of error to the argument, however, it is clear that not all enumerations of error are argued. We address in this opinion such issues as are argued. Claims of error not argued are waived. See § IV (B) (2) of the Unified Appeal Procedure.

reprosecuted for kidnapping with bodily injury.

(a) We note that whether Potts may be convicted in separate trials of both kidnapping with bodily injury and murder in the circumstances presented here is an issue that has been raised and decided adversely to Potts' contention both by this Court and the United States Court of Appeals for the Eleventh Circuit. *Potts v. State*, 241 Ga. 67 (11) (243 SE2d 510) (1978); *Potts v. Zant*, 734 F2d 526 (II) (11th Cir. 1984). However, Potts points out that this double jeopardy claim has not been reviewed in light of *Grady v. Corbin*, supra. We shall now undertake to do so.

> The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth . . . "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U. S. 711, 717 [(89 SC 2072, 23 LE2d 656)] (1969). [*Brown v. Ohio*, 432 U. S. 161, 164-165 (97 SC 2221, 53 LE2d 187) (1977).]

It is the second of these protections — against a second prosecution for the same offense after conviction — at issue here. The most commonly cited test for this protection is whether either of the criminal statutes in each prosecution "requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932). If so, the two offenses are not the "same" for double jeopardy purposes, even though both prosecutions arise out of the same criminal "act" or "transaction" or "episode." As both this court and the Eleventh Circuit Court of Appeals have held, kidnapping with bodily injury and murder are not the "same" offense under the *Blockburger* test. *Potts v. State*, 241 Ga., supra; *Potts v. Zant*, 734 F2d, supra.

However,

> even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. [*Grady v. Corbin*, supra, 110 SC at 2087.]

Potts argues that the relevant "conduct" present in both the Forsyth County prosecution and the Cobb County prosecution is his act of shooting Michael Priest in the head and that this factual commonality precludes successive prosecutions for the separate and different

crimes of murder and kidnapping with bodily injury. But *Grady v. Corbin* explicitly rejects an "actual evidence" or "same evidence" test of the kind Potts argues here. Id. at 2093. Even assuming, as Potts now contends, that the Forsyth County prosecution is the "first" prosecution,[3] it was not necessary to the Cobb County conviction that the state prove the "entirety" of the "conduct" for which Potts was convicted in Forsyth County to establish an essential element of the offense charged in Cobb County. Id. at 2094.

To understand the term "conduct" within the meaning of *Grady v. Corbin*, it is useful to contrast the *Grady* and *Blockburger* tests. The *Blockburger* test focuses strictly upon the "statutory elements of the two crimes with which a defendant has been charged." *Grady v. Corbin*, supra, 110 SC at 2097 (Scalia, dissenting). If all the elements of one of the two crimes are included in the other, the two crimes are the same as a matter of law and successive prosecutions are barred, no matter whether the greater or lesser offense is tried first. *Illinois v. Vitale*, 447 U. S. 410, 421 (100 SC 2260, 65 LE2d 228) (1980). But even if the two offenses are not the same as a matter of law, it might be necessary as a matter of fact for the state to prove all of the elements of one offense to establish the other. For example:

> In *Harris* [*v. Oklahoma*, 433 U. S. 682 (97 SC 2912, 53 LE2d 1054) (1977)], the defendant was first convicted of felony murder after his companion shot a grocery store clerk in the course of a robbery. The State then indicted and convicted him for robbery with a firearm. The two prosecutions were not for the "same offense" under *Blockburger* since, as a statutory matter, felony murder could be established by proof of any felony, not just robbery, and robbery with a firearm did not require proof of a death. Nevertheless, because the State admitted that " 'it was necessary for *all* the ingredients of the underlying felony of Robbery with Firearms to be proved' " in the felony-murder trial, the Court unanimously held that the subsequent prosecution was barred by the Double Jeopardy Clause. [Emphasis supplied.] [*Grady v. Corbin*, supra, 110 SC at 2092.]

So too in *Grady v. Corbin*. Corbin was convicted in traffic court of driving while intoxicated and failing to keep right of the median.

---

[3] The Cobb County case originally was tried first. After the grant of federal habeas relief, Potts was first retried on the issue of sentence in Forsyth County and then on the issues of guilt and sentence in Cobb County. The state argues that the retrial in Cobb County is a continuation of the original trial and the Cobb County prosecution is the "first" prosecution for double jeopardy purposes.

He was then indicted for vehicular homicide and assault charges arising out of the same episode involved in the first prosecution. As a matter of statutory construction, the two prosecutions did not involve the "same offense" under *Blockburger*. However, the State of New York admitted that it was necessary to "prove the *entirety* of the conduct for which Corbin was convicted — driving while intoxicated and failing to keep right of the median — to establish essential elements of the homicide and assault offenses." Id. at 2094. (Emphasis supplied.) Hence, the successive prosecution was barred by the Double Jeopardy Clause.

In our case, Potts kidnapped Michael Priest in Cobb County, took him to Forsyth County and shot him in the head, killing him. He was prosecuted in Cobb County for the offense of kidnapping with bodily injury[4] and in Forsyth County for the offense of murder. These two crimes are not the same as a matter of law (*Blockburger*) because

> [k]idnapping with bodily injury requires an unlawful abduction or stealing away and the holding of a person, plus the infliction of some bodily injury upon that person. The crime of murder is committed when one causes the *death* of another with the peculiar mental state of express or implied malice. [*Pryor v. State*, 238 Ga. 698, 701 (234 SE2d 918) (1977).]

They are not the same as a matter of fact (*Grady v. Corbin*, supra) because the state did not have to prove that Potts acted with malice or that Michael Priest died to establish the offense of kidnapping with bodily injury in Cobb County,[5] and did not have to prove that Potts kidnapped Michael Priest to establish the offense of murder in Forsyth County. In neither trial was it necessary for the state to prove the "*entirety*" of the conduct for which Potts was convicted in the other trial.

(b) We note that even those Justices of the United States Supreme Court who have consistently urged a "single transaction" test for Double Jeopardy would make an exception where "no single court ha[s] jurisdiction of all the alleged crimes." *Ashe v. Swenson*, 397 U. S. 436, 453, fn. 7 (90 SC 1189, 25 LE2d 469) (1970) (Brennan, concurring). Moreover, the majority opinion in *Grady v. Corbin* relies on the fact that "the state could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a sin-

---

[4] As to the issue of venue for this offense, see Division 2 of this opinion, ante.

[5] The language of the indictment does not constitute an "admission" to the contrary. It is settled that an unnecessary description of an unnecessary fact contained in an indictment need not be proven. *Corson v. State*, 144 Ga. App. 559 (2) (241 SE2d 454) (1978).

gle proceeding, thereby avoiding this double jeopardy question." Id. at 2095. By contrast, the offenses involved in our case could not have been prosecuted within the "jurisdiction" of a single superior court.

We recognize that separate counties within the state are not "separate sovereign entities," *Waller v. Florida*, 397 U. S. 387, 391 (90 SC 1184, 25 LE2d 435) (1970), that may successively prosecute a criminal defendant for the "same offense" within the *Blockburger* test. Compare *Brown v. Ohio*, 432 U. S. 161 (97 SC 2221, 53 LE2d 187) (1977); *Heath v. Alabama*, 474 U. S. 82 (106 SC 433, 88 LE2d 387) (1985). But where, as here, a criminal defendant goes on a multi-county crime spree, the Double Jeopardy Clause does not preclude successive prosecutions in separate counties for separate crimes arising out of a single criminal episode — even if they have factual elements in common — where they are not the "same offense" as a matter of fact or of law.

(c) Potts also raises again a contention that the jury's ambiguous verdict in the original Cobb County trial precludes a prosecution for kidnapping with bodily injury in the retrial, because, he contends, he was originally convicted in Cobb County of simple kidnapping and cannot be reprosecuted for kidnapping with bodily injury. We addressed and decided this issue adversely to Potts' contention in *Potts v. State*, 258 Ga. 430 (369 SE2d 746) (1988).

2. Because Potts seized his victim in Cobb County, venue for prosecuting the charge of kidnapping with bodily injury lay in Cobb County even though the bodily injury was inflicted in Forsyth County. *Krist v. State*, 227 Ga. 85 (4) (179 SE2d 56) (1970). The trial court's instructions to the jury on the issue of venue were not erroneous.

3. The jury was authorized to impose a death sentence for the offense of kidnapping with bodily injury on the ground that the offense of kidnapping with bodily injury was committed while the offender was engaged in the commission of the capital felonies of murder and armed robbery. OCGA § 17-10-30 (b) (2). Although the offense of kidnapping was consummated when the victim was seized in Cobb County, see *Miller v. State*, 174 Ga. App. 42 (3) (329 SE2d 252) (1985), the murder and the armed robbery were sufficiently a part of the same criminal transaction to be considered as and found to be § b (2) statutory aggravating circumstances of the offense of kidnapping with bodily injury. *Horton v. State*, 249 Ga. 871 (11) (295 SE2d 281) (1982).

4. Potts argues that since he has already been sentenced to death in Forsyth County for the murder of Michael Priest, he cannot be sentenced to death in Cobb County for the same homicide. But he has not been sentenced to death in Cobb County for murder. He has been sentenced to death in Cobb County for the offense of kidnapping with

bodily injury — a capital felony. See OCGA § 16-5-40 (b). The imposition of a death sentence for this offense as well as for murder did not subject Potts to greater punishment than intended by the legislature. *Garrett v. United States*, 471 U. S. 773 (105 SC 2407, 85 LE2d 764) (1985). There is no issue here of mutually supporting aggravating circumstances. *Potts v. State*, 259 Ga. 812 (3) (388 SE2d 678) (1990).

5. Potts contends the jury's sentencing verdict is ambiguous because the jury, using a pre-printed form, "filled in several spaces on the form and left other spaces blank." Appellant's brief, p. 53.

The jury filled in its list of statutory aggravating circumstances at the appropriate place on the form and filled in the portion relating to its recommendation of a death sentence. It left blank only those portions of the pre-printed verdict form which related to a recommendation of a life sentence.

There was no ambiguity.

6. Potts contends he was denied his right to a speedy trial. He notes that the federal district court granted habeas relief in January of 1983 and that, because the state appealed from that order, the remittitur was not received by Cobb County until April 1987.

The state's appeals in this case were not unreasonable or frivolous, and were not taken for the purpose of delay. Thus, there is no "reason for according these delays any effective weight towards [Potts'] speedy trial claims." *United States v. Loud Hawk*, 474 U. S. 302, 316 (106 SC 648, 88 LE2d 640) (1986). The delays since 1987 were caused by Potts, and Potts was not denied his constitutional right to a speedy trial.

7. Next, Potts raises what he styles "Right to Trial Issues," Appellant's brief, p. 69, contending that after he "had to fight for the right to represent himself," he was effectively denied that right by acts and omissions to act by the trial court and other officials.

Potts chose to represent himself. He was provided the assistance of standby counsel. See *Potts v. State*, supra, 259 Ga. 812 at (4). Since Potts had this legal assistance available to him, the trial court did not err by denying Potts' motion for inmate legal assistance. *Bounds v. Smith*, 430 U. S. 817, 823 (97 SC 1491, 52 LE2d 72) (1977) (discussing *Johnson v. Avery*, 393 U. S. 483 (89 SC 747, 21 LE2d 718) (1969)).

The trial court did not err by refusing to provide funds to ascertain the cost of long-term imprisonment versus the cost of imposing a death sentence. Nor did the court err by denying Potts' motion for discovery of materials relating to a possible challenge to the grand jury which indicted him in 1975, since he has waived his right to present such a challenge. *Potts v. State*, supra, 259 Ga. at 814 (2).

Especially in the absence of any showing of wrongdoing by the district attorney, the trial court did not err by refusing to formally

reprimand the district attorney for actions taken by the prison warden at the Georgia Diagnostic and Classification Center. See *Hightower v. State*, 259 Ga. 770 (2) (386 SE2d 509) (1989).

Potts was granted ample access to the prison law library and to supplies. He was not denied "meaningful" access to the judicial process. *Bounds v. Smith*, supra.

Potts was physically competent to stand trial. He was not denied proper medical care. Nor did the trial court abuse its discretion when it denied Potts' motion for a two-day continuance so Potts could "rest" before the trial began. *O'Neal v. State*, 254 Ga. 1 (2) (325 SE2d 759) (1985).

8. Death qualification of prospective jurors is not unconstitutional. *Ford v. State*, 257 Ga. 461 (3) (360 SE2d 258) (1987). The trial court's death-qualification findings are "within the deference due the trial judge's determination." *Jefferson v. State*, 256 Ga. 821, 824 (353 SE2d 468) (1987). The court did not err by denying Potts' motion to excuse for cause two prospective jurors who were former law enforcement officers. *Jordan v. State*, 247 Ga. 328, 340, fn. 16 (276 SE2d 224) (1981). The voir dire examination regarding possible pre-voir dire discussion of the case by one panel of prospective jurors was adequate to unearth any possible prejudice. *Crawford v. State*, 257 Ga. 681 (3) (362 SE2d 201) (1987).

9. Potts did not timely raise an issue of the prosecutor's exercise of peremptory challenges against women. This claim is not preserved for review. *Greene v. State*, 260 Ga. 472 (1) (396 SE2d 901) (1990). Compare *Potts v. State*, supra, 259 Ga. at 101, fn. 3.

10. During his Forsyth County trial, Potts had been shackled with leg irons for reasons discussed in *Potts v. State*, supra, 259 Ga. at 100 (3). Before the instant trial began, the issue of restraining devices was raised. The court intimated that so long as Potts behaved himself, he would not be handcuffed or shackled with leg chains during the trial. However, on the first day of the voir dire at least one panel of prospective jurors entered the courtroom as Potts sat at his table handcuffed and shackled with leg chains. Potts, representing himself, asked to approach the bench. He then walked to the bench and registered an objection to being restrained in the presence of the prospective jurors. The prospective jurors were removed from the courtroom, and the court conducted a brief hearing on the matter. Apparently, the court had not given a specific order to the deputy in charge of security concerning restraining devices, and the deputy felt he could not remove the leg chains and cuffs without a specific order authorizing the removal. Noting that the matter had not been brought to the court's attention before the jurors were brought into the courtroom initially, the court ordered the cuffs and leg chains removed before the prospective jurors returned.

Potts now contends the first panel of prospective jurors was tainted and the court should have excused the panel and summoned replacements. Potts, however, did not seek the excusal of the panel. Moreover, Potts did not challenge for cause any member of the panel based on the restraining devices issue. The members of the first panel who were selected for the jury testified on voir dire that they either had not noticed the restraining devices or had not been affected by them.

Even assuming any possible error was not induced by Potts' failure to raise the issue *before* the prospective jurors entered the courtroom or by his decision to rise and approach the bench in the presence of the prospective jurors rather than to send standby counsel to the bench, we find that Potts was not prejudiced by his brief appearance in restraining devices before a small minority of prospective jurors. *Gates v. Zant*, 863 F2d 1492, 1501 (11th Cir. 1989); *Ford v. State*, supra, 257 Ga. at 465 (5).

11. During his flight toward Florida after kidnapping and killing Michael Priest, Potts told his companion Norma Blackwell that if she wanted a dog she thought "was cute," he would "run" its owner "off the road and kill her and get the dog." Potts now contends this testimony impermissibly injected his character in issue. See *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988). Potts, however, did not object to this testimony at trial, and we need not consider whether this testimony should have been excluded on proper objection or whether it might have been relevant and material to some issue other than character, and thus properly admitted even though it might incidentally have reflected on Potts' character.

12. Potts' 41st enumeration is answered by *Potts v. State*, supra, 259 Ga. at 102 (14).

13. There was no error in the admission of photographs of a Florida murder victim into evidence at the sentencing phase of the trial. *Baty v. State*, 257 Ga. 371 (7) (359 SE2d 655) (1987).

14. The trial court's instructions on reasonable doubt were not erroneous. *Cage v. Louisiana*, 498 U. S. ___ (111 SC 328, 112 LE2d 339) (1990). The trial court did not equate "reasonable doubt" with "grave uncertainty" or an "actual substantial doubt," or otherwise instruct the jury explicitly or implicitly in a manner that would allow a finding of guilt by a lesser standard than required by the Due Process Clause.

15. Testimony about Potts' flight to south Georgia was properly admitted over a relevancy objection. *Ingram v. State*, 253 Ga. 622 (6) (323 SE2d 801) (1984).

16. The trial court did not err by refusing to give Potts' requested charge on voluntary intoxication. *Foster v. State*, 258 Ga. 736 (10) (374 SE2d 188) (1988).

17. The court did not err by telling the jury its sentencing verdict must be unanimous. *Romine v. State*, 256 Ga. 521 (2) (350 SE2d 446) (1986).

18. Potts contends it was error to introduce at the sentencing phase evidence concerning an allegedly involuntary confession to a murder he committed in Florida.

The record shows that in 1975, while he was in the hospital recovering from a bullet wound he received three weeks previously, Potts initiated an interview with a Florida law enforcement officer. The officer checked with Potts' doctor, who told him Potts was physically and mentally sound enough to be interviewed. The officer's own observations of Potts confirmed to the officer that Potts was coherent and understood what he was doing. After obtaining a waiver of rights, the officer interviewed Potts and elicited Potts' confession to murder.

Unlike the cases Potts cites, there was no coercion, and the evidence amply supports the trial court's determination that Potts "understood and voluntarily waived each of his *Miranda* rights and thereafter gave this statement freely and voluntarily without any hope of benefit or fear of injury" and that the "voluntariness of the statement was not affected by any medication" Potts may have been taking. Compare *Mincey v. Arizona*, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978) (defendant interrogated within hours of being critically wounded while in intensive care; defendant's attempts to conclude interview were ignored); *Beecher v. Alabama*, 389 U. S. 35 (88 SC 189, 19 LE2d 35) (1967) (defendant's confession obtained at gunpoint); *Townsend v. Sain*, 372 U. S. 293 (83 SC 745, 9 LE2d 770) (1963) (defendant confessed after being given truth serum).

19. The record likewise supports the admission of a 1987 statement to a Forsyth County law officer that Potts initiated after being treated and released for another gunshot wound. *Potts v. State*, supra, 259 Ga. at 103.

20. "It was not error to exclude evidence of Potts' ineligibility for parole if given a life sentence." Id. at 102 (12).

21. It was not error to prove Potts' escape attempt in aggravation, even though he has not been prosecuted or convicted for that offense. *Isaacs v. State*, 259 Ga. 717 (16 b) (386 SE2d 316) (1989). See also *Hammond v. State*, 260 Ga. 591 (6) (398 SE2d 168) (1990).

22. There is no merit to Potts' contention that impermissible "victim-impact" evidence was admitted at the sentencing phase in violation of *Booth v. Maryland*, 482 U. S. 496 (107 SC 2529, 96 LE2d 440) (1987). *Payne v. Tennessee*, 501 U. S. ___ (111 SC 2597, 115 LE2d 720) (1991). See also *Potts v. State*, supra, 259 Ga. at 104 (23).

23. Just before closing arguments began at the sentencing phase of the trial, the jury submitted to the court a list of questions concerning the evidence, particularly Potts' testimony that this trial was

pointless because he had already been sentenced to death in Forsyth County.[6] The court declined to answer the questions. Now Potts contends the questions demonstrate the jury had begun its deliberations prematurely and the court should have taken some (unspecified) action "to stop the jury from deliberating." Appellant's brief at 128-129.

Potts did not timely raise the issue or seek any action by the trial court. *United States v. Edwards*, 696 F2d 1277, 1282 (11th Cir. 1983). Although the questions indicate the jurors had discussed to some extent the evidence that had been presented, the questions do not show that the jurors had formed premature conclusions about the evidence or had committed themselves to any particular outcome. There was no error in the trial court's omission to instruct the jury sua sponte. Compare *Ellis v. State*, 164 Ga. App. 366 (9) (296 SE2d 726) (1982).

24. The trial court did not commit reversible error by declining to answer the jury's questions about the possibility of parole. *Cohen v. State*, 257 Ga. 544 (3) (361 SE2d 373) (1987). However, the better practice is to respond to jury questions about parole by "telling the jury in no uncertain terms that such matters are not proper for the jury's consideration." *Quick v. State*, 256 Ga. 780, 787 (353 SE2d 497) (1987); *Lee v. State*, 258 Ga. 762 (7) (374 SE2d 199) (1988).

25. The court correctly defined malice murder in the language of OCGA § 16-5-1. *McCord v. State*, 182 Ga. App. 586 (2) (356 SE2d 689) (1987). Contrary to Potts' argument, murder is not an element of the offense of kidnapping with bodily injury. Moreover his argument about "built-in" aggravating circumstances has been answered contrary to his position in *Jefferson v. State*, 256 Ga. 821, 829 (353 SE2d 468) (1987).

26. Citing *Maynard v. Cartwright*, 486 U. S. 356 (108 SC 1853, 100 LE2d 372) (1988), Potts contends the b (7) aggravating circumstance, as applied, does not sufficiently channel the jury's discretion. For reasons stated in *Taylor v. State*, 261 Ga. 287, 295-296 (13) (404 SE2d 255) (1991), we find no merit to this argument.

27. The prosecutor did not impermissibly trivialize the task of the sentencing jury by arguing that Potts himself — not the jury — was ultimately responsible for the crimes he committed and for whatever punishment he received. *Brooks v. Kemp*, 762 F2d 1383, 1410 (11th Cir. 1985).

28. There is no merit to the general constitutional attacks on our death penalty laws and procedures Potts raises in the division of his brief styled "General Death Penalty Issues."

29. The trial court did not err by denying Potts' motion for new

---

[6] Among other things, the jury wondered why Potts "had this trial when he feels our decision means nothing."

trial.

30. The evidence supports the jury's findings of statutory aggravating circumstances. OCGA § 17-10-35 (c) (2).[7] We do not find that the death sentence was imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Tucker v. State*, 245 Ga. 68 (263 SE2d 109) (1980); *Stanley v. State*, 240 Ga. 341 (241 SE2d 173) (1977); *Thomas v. State*, 240 Ga. 393 (242 SE2d 1) (1977); *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977).

DECIDED NOVEMBER 6, 1991 —
RECONSIDERATION DENIED DECEMBER 4, 1991.

*George R. Asinc, Melodie H. Clayton,* for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Jack E. Mallard, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.

---

[7] The jury found that the offense of kidnapping with bodily injury occurred while the offender was engaged in the commission of the capital felonies of armed robbery and murder, and found that the offense of kidnapping with bodily injury was outrageously or wantonly vile, horrible or inhuman in that it involved torture. OCGA § 17-10-30 (b) (2) and (b) (7).