STATE OF NORTH CAROLINA v. KENNETH MICHAEL BRYANT

No. 166A91

(Filed 30 July 1993)

## 1. Homicide § 230 (NCI4th) — first-degree murder — sufficiency of evidence

There was sufficient evidence of first-degree murder to withstand defendant's motion to dismiss and take the case to the jury where defendant contended that there was scant physical evidence and cites an inconsistency between an admission by defendant and the physical evidence, but that was for the jury's consideration; defendant cites an inherently unreliable identification of defendant by a State's witness but the credibility of a witness's identification and the weight given his testimony are for the jury to decide; while there is an exception when the witness's testimony is inherently incredible, the witness here had seen defendant before and was standing in a lighted parking lot when defendant came running past him some eight to ten feet away, and the witness gave a description the same night to a deputy sheriff, picked defendant out of a photographic lineup, and identified defendant at trial as the man he saw running past him through the parking lot; contrary to defendant's contentions, the State produced evidence placing him at the crime scene at the time of the shooting; although defendant argued that defendant's threats against the victim were vague and made while he was intoxicated, this would simply be another factor to be considered by the jury; and there is no requirement that the State produce evidence of flight in a first-degree murder case, nor is there any requirement that the State probe into a possible defense theory such as the murder being in conjunction with a larceny.

**Am Jur 2d, Homicide §§ 425 et seq.**

## 2. Criminal Law § 762 (NCI4th) — murder — instructions — definition of reasonable doubt

The trial court erred in a noncapital first-degree murder prosecution by instructing the jury that a reasonable doubt is an honest substantial misgiving generated by the insufficiency of the proof and by telling the jury that they could find defendant guilty if they were satisfied to a moral certainty

of the truth of the charge and that they did not have a reasonable doubt if they had an abiding faith to a moral certainty in the defendant's guilt. The instruction will not pass muster under *Cage v. Louisiana*, 498 U.S. 39, when reasonable doubt is defined in terms of "grave uncertainty," "actual substantial doubt," or in terms which suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard, and the jury is then told that what is required for conviction is moral certainty of the truth of the charge. The correct standard for conviction beyond a reasonable doubt is evidentiary certainty rather than moral certainty.

**Am Jur 2d, Trial § 832.**

Justice MEYER dissenting.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Brown, J., at the 2 October 1990 Criminal Session of Superior Court, Edgecombe County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 16 February 1993.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

On 30 April 1990, an Edgecombe County grand jury indicted defendant for the murder of Roy Gene Ackery (the victim). Defendant was tried non-capitally and found guilty of first-degree murder. On 5 October 1990, a judgment was entered sentencing defendant to life imprisonment. From this judgment defendant appeals to this Court.

Defendant brings forward seven issues on appeal. However, we find it necessary to address only two of those issues since defendant is entitled to a new trial.

In defendant's first argument, he contends that the trial court erred by refusing to grant his motion to dismiss at the close of all the evidence. He contends that his conviction must be vacated

because the State's evidence was insufficient to convict him of first-degree murder.

When ruling on a motion to dismiss, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Sweatt*, 333 N.C. 407, 414, 427 S.E.2d 112, 116 (1993). "The test that the trial court must apply is whether there is substantial evidence — either direct, circumstantial, or both — to support a finding that the crime charged has been committed and that defendant was the perpetrator." *Id.* (quoting *State v. Clark*, 325 N.C. 677, 682, 386 S.E.2d 191, 194 (1989)). The term "substantial evidence" means "the evidence must be existing and real, not just seeming or imaginary." *Clark*, 325 N.C. at 682, 386 S.E.2d at 194. When there is substantial evidence of each element of the crime charged and that the defendant was the perpetrator, then a motion to dismiss should be denied. *Id.*

The evidence taken in the light most favorable to the State tends to show the following facts and circumstances. Defendant was living and working in Jackson, Mississippi, in December 1989. His estranged wife, Doris Jones Bryant, was living with the victim in a mobile home on Highway 43 across from the Hitching Post, a bar in Edgecombe County, North Carolina.

Cheryl Marlowe, who had dated defendant sporadically for over three years, testified at trial, under a grant of immunity, that on 30 December 1989 she and defendant went to the Good Tymes bar in Rocky Mount where they drank beer and shot pool. They left the bar at approximately 9:30 p.m. and drove around Nash and Edgecombe Counties. At approximately 10:30 p.m., defendant told Ms. Marlowe to let him out of the car. Marlowe stopped at a stop sign located at the intersection of a rural paved road and Highway 43 near the victim's mobile home and the Hitching Post. Defendant instructed Ms. Marlowe to continue driving down the road for a while then return to pick him up after approximately five minutes. Marlowe testified that prior to getting out of the car, defendant reached under the seat. She did not see him get anything from under the seat, but she knew that he had placed a gun there earlier. Once defendant was out of the car, Marlowe drove further down the road and relieved herself in a patch of trees. She then made a U-turn and returned to the stop sign to pick up defendant. When defendant entered the car, he told Marlowe

that neither his estranged wife nor the victim was at home. Marlowe drove defendant to his sister's house, but she was not at home. During the drive back to Wilson from defendant's sister's house, defendant removed a gun from under the seat, unloaded it and threw a shell out of the window. Defendant then told Marlowe that when he arrived at the victim's mobile home, he knocked on the window, the victim looked through the blinds, and both men grabbed for the door knob. Defendant then fired his gun through the door.

Marlowe had been interviewed three times prior to the trial. Her version of what happened on the night of the murder varied in each of her statements, however she explained that the variations were due to the fact that her husband was present in her home during the second interview, she was afraid of defendant, and she was afraid of losing her children if she became involved. Marlowe testified that she had said some things which were true and she had said some things which were not true, but her testimony before the court was the truth.

Charles Myers also testified for the State. Myers testified that at approximately 10:00 p.m. or 10:30 p.m. on the night of the murder he was standing outside of the Hitching Post. He heard the sound of a gun shot come from the victim's mobile home and within forty or forty-five seconds defendant ran past him. Myers stated that prior to the murder he did not know defendant's name, but he had seen defendant "around town."

Richard Hopkins testified that on the night of the murder defendant asked him how long it had been since he had seen the victim. Hopkins responded that it had been about two days. Defendant then pulled out a barber's razor and said, "[w]ell, I got something for him when I see him."

Doris Bryant, defendant's estranged wife, testified that in April, 1989, defendant kicked open the door of her apartment at midnight and told her that he would "kill [the victim]" and "he'd kill [her], too." Doris Bryant also testified that when she returned to the victim's mobile home between 10:30 p.m. and 10:40 p.m. on the night of his murder, she discovered the victim's body lying against the mobile home door.

James Adcock, a paramedic, testified that when he arrived at the victim's mobile home, the victim did not have a pulse, nor

was he breathing. Adcock observed a gun shot wound to the right temple of the victim's head, and was of the opinion that the victim was dead upon Adcock's arrival at the scene.

Defendant did not testify at trial, but he presented witnesses to establish an alibi defense. Defendant called as witnesses, his brother-in-law, his brother's girlfriend, his sister's boyfriend and his three sisters. All of defendant's witnesses testified that defendant was in their presence on 30 December 1989 at approximately 10:30 p.m. playing cards.

[1] Notwithstanding the evidence stated above, defendant specifically argues that the evidence was insufficient to convict him of murder in the first degree for the following reasons: 1) the State presented scant physical evidence; 2) the inconsistency between an admission by defendant and the physical evidence; 3) an inherently unreliable identification of defendant by a State's witness; 4) the State produced no evidence which placed defendant at the crime scene at the time of the shooting; 5) the alleged threats which defendant made against the victim were vague, and most were made while defendant was under the influence of alcohol; 6) the State produced no evidence that defendant fled the area; and 7) the lack of further evidence regarding observations by a witness of a possible larceny following the murder.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 494 (1992). Defendant does not contend that the evidence is insufficient to prove a specific element of the offense of first-degree murder. Rather, he attacks what he perceives as a general weakness in the State's case for the seven reasons submitted. We conclude that the evidence presented by the State was sufficient to withstand the motion to dismiss and to take the case to the jury.

Where there is substantial evidence of each element of the offense charged—as here—the fact that there was "scant" physical evidence, or inconsistencies in the evidence, is for the jury's consideration. *See State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). In addition, "the credibility of the witness' identification and the weight given his testimony is a matter for the jury to decide." *State v. Turner*, 305 N.C. 356, 362, 289 S.E.2d 368, 372 (citing *State v. Green*, 296 N.C. 183, 250 S.E.2d 197 (1978)); *State v. Orr*, 260 N.C. 177, 132 S.E.2d 334 (1963); *State v. Bowerman*,

232 N.C. 374, 61 S.E.2d 107 (1950). This Court recognizes an exception to this rule when the witness' testimony is "inherently incredible." *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967) (witness, who had never seen defendant before, identified him at scene of crime, at night, and at a distance of 286 feet). However, in the instant case, the witness, Charles Myers, had seen defendant before and was standing in a lighted parking lot when defendant came running past him some eight to ten feet away. Myers gave a description of defendant on the same night to a deputy sheriff, picked defendant out of a photographic lineup, and identified defendant at trial as the man he saw running past him through the parking lot.

Contrary to defendant's contentions, the State did produce evidence placing him at the crime scene at the time of the shooting. Charles Myers' testimony that he heard the sound of a shot coming from the victim's trailer around 10:00 p.m. or 10:30 p.m. and saw defendant running past him some forty or forty-five seconds later is sufficient to raise an inference that defendant was at the mobile home at the time of the shooting. As for defendant's argument that his threats were vague and made while he was under the influence of alcohol, we do not find this to be fatal to the State's case. Assuming underlined arguendo, defendant's threats were vague and made while he was intoxicated, this would simply be another factor to be considered by the jury in determining whether defendant was guilty of premeditated and deliberate murder. Finally, there is no requirement that the State produce evidence of flight in a first-degree murder case, nor is there any requirement that the State probe into a possible defense theory such as the murder being in conjunction with a larceny.

The evidence in the present case, taken in the light most favorable to the State, was clearly sufficient to support a finding that defendant intentionally shot and killed the victim with malice, premeditation and deliberation. Thus, the trial court did not err in refusing to grant defendant's motion to dismiss. This argument is rejected.

[2]  The only other issue which we must address is defendant's contention that the trial court erred by giving a reasonable doubt instruction that reduced the State's burden of proof below the standard mandated by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. The trial court instructed the jury in pertinent part as follows:

STATE v. BRYANT

[334 N.C. 333 (1993)]

When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that they must be fully satisfied or entirely convinced or satisfied to a *moral certainty* of the truth of the charge.

If, after considering, comparing and weighing all the evidence, the minds of the jurors are left in such condition that they cannot say they have an abiding faith to a *moral certainty* in the defendant's guilt, then they have a reasonable doubt; otherwise not.

A reasonable doubt, as that term is employed in the administration of criminal law, is *an honest substantial misgiving* generated by the insufficiency of the proof.

(Emphasis added.) Defendant argues that he is entitled to a new trial because the trial court committed constitutional error by giving the above instruction on reasonable doubt which was identical in pertinent respects to an instruction found unconstitutional in *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1991). *See also Sullivan v. Louisiana*, --- U.S. ---, 124 L. Ed. 2d 182 (1993) (*Cage* error is reversible error per se and not subject to harmless error analysis).

The State argues that since defendant did not object at trial to the reasonable doubt instruction, the alleged infirmity in the instruction must be addressed in terms of "plain error." The "plain error" rule was set forth by this Court in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983) as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

**STATE v. BRYANT**

[334 N.C. 333 (1993)]

*United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis in original).

*Id.* at 660, 300 S.E.2d at 378.

*Cage* error is fundamental error. A jury verdict rendered in violation of *Cage* is not a jury verdict within the meaning of the Sixth Amendment. *Sullivan v. Louisiana*, --- U.S. at ---, 124 L. Ed. 2d at 188. Clearly, convicting a person of first-degree murder in violation of *Cage* meets the test of plain error.

In *Cage*, the United States Supreme Court held that the reasonable doubt instruction used in the defendant's trial was constitutionally defective. The instruction was as follows:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*.

*State v. Cage*, 498 U.S. at 40, 112 L. Ed. 2d at 341-42.

This Court addressed reasonable doubt instructions in light of *Cage* in two recent cases, *State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992), and *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992). In *Hudson*, the Court upheld the reasonable doubt jury instruction. However, the reasonable doubt instruction in *Hudson* did not contain any of the three terms, "grave uncertainty," "actual substantial doubt," or "moral certainty," which were condemned in *Cage*. *Id.* at 142-43, 415 S.E.2d at 742-43. We concluded that the jury could not have been misled by the reasonable doubt instruction. *Id.*

STATE v. BRYANT

[334 N.C. 333 (1993)]

In *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992), five Justices concurred in awarding the defendant a new trial. However, only two Justices in the majority reached the issue of the constitutionality of the reasonable doubt instruction. Thus, we do not consider the opinion in *Montgomery* as binding precedent from this Court on the constitutionality of the reasonable doubt instruction. The instruction reviewed in *Montgomery* was in pertinent part:

> Members of the jury, a reasonable doubt, or at least a definition of that [sic] is acceptable by our Supreme Court, is that it is not a vain, imaginary or fanciful doubt, but rather is one based upon sanity or saneness and rationality. And when it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it means that you must be fully satisfied or entirely convinced or satisfied to a *moral certainty* of the truth of the charge, and after considering and comparing and weighing all the evidence, or the lack of the evidence, as the case may be, if your minds are left in such condition that you cannot say that you have abiding faith to a *moral certainty* of the defendant's guilt of one or more or all of those charges, then under those circumstances, you have a reasonable doubt. Otherwise, you do not.

> A reasonable doubt, as that term is employed in the administration of criminal law, is an *honest, substantial misgiving*, one generated by the insufficiency which fails to convince your judgment and conscience and satisfy your reason as to the guilt of the accused.

Two members of the Court held that "the use of the terms 'substantial misgiving' and 'moral certainty' in combination in the trial court's reasonable doubt instruction violated the requirements of the Due Process Clause as interpreted by the Supreme Court in *Cage.*" *Id.* at 572, 417 S.E.2d at 749-50. The trial court in *Montgomery* joined its definition of a reasonable doubt, an "honest, substantial misgiving," with a requirement that, to convict the defendant, the jury must be convinced to a "moral certainty" rather than to an evidentiary certainty. *Id.* at 573, 415 S.E.2d at 742. Two members of this Court concluded that while the instruction in *Montgomery* was "not identical to the instruction held unconstitutional in *Cage*, the trial court used a combination of terms so similar to the combination disapproved in *Cage* that there is a 'reasonable likelihood'

STATE v. BRYANT

[334 N.C. 333 (1993)]

that the jury applied the challenged instruction in a way that violated the Due Process Clause." *Id.* The instruction in the instant case is essentially identical to the one in *Montgomery.* We now hold that the reasonable doubt instruction used by the trial court in the instant case also violates *Cage.*

The United States Supreme Court in *Cage* took note of the fact that the Louisiana Supreme Court had upheld the reasonable doubt instruction in *Cage* notwithstanding the use of the phrases "grave uncertainty" and "moral certainty" on the grounds that, taking the charge as a whole, reasonable persons of ordinary intelligence would understand the definition of reasonable doubt. However, the United States Supreme Court rejected this view noting:

> The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage,* 498 U.S. at 41, 112 L. Ed. 2d at 342.

We believe the crucial term in the reasonable doubt instruction condemned by the United States Supreme Court in *Cage* is "moral certainty." The correct standard for conviction beyond a reasonable doubt is evidentiary certainty rather than moral certainty.

A moral certainty may exist when a thing is "probable though not proved." Webster's Ninth Collegiate Dictionary 771 (9th ed. 1991). A moral certainty may exist when something is "based upon strong likelihood or firm conviction, rather than upon the actual evidence or demonstration." The American Heritage Dictionary 852 (1979). The role of the jury is to determine the truth as to whether the defendant is guilty of the crime charged or some lesser included offense thereof. Truth is "conformity to knowledge, fact, actuality, or logic," while the word moral is "concerned with

the judgment of the goodness or badness of human action and character." *Id.* at 1378.

A jury instruction which emphasizes what is good or bad—a moral judgment, rather than truth—an evidentiary judgment, is inconsistent with the role of the jury in deciding the guilt or innocence of the defendant. When a jury is instructed that it may convict if it finds the defendant guilty to a moral certainty it increases the possibility that a jury may convict a person because the jury believes he is morally guilty without regard to the sufficiency of the evidence presented at trial to prove his guilt. Thus, when reasonable doubt is defined in terms of "grave uncertainty," "actual substantial doubt," or in terms which suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard, and the jury is then told that what is required for conviction is moral certainty of the truth of the charge, the instruction will not pass muster under *Cage*.

In the instant case, the jury was instructed that a "reasonable doubt . . . is an honest substantial misgiving generated by the insufficiency of the proof." The term "honest substantial misgiving" is modified by the additional phrase,"generated by the insufficiency of the proof," thus referring the jurors back to an evidentiary standard. However, the jurors were also told that they could find defendant guilty if they were "satisfied to a moral certainty of the truth of the charge," and that they did not have a reasonable doubt if they had "an abiding faith to a moral certainty in the defendant's guilt." Thus, we find *Cage* error, entitling defendant to a new trial. *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339; *Sullivan v. Louisiana*, --- U.S. ---, 124 L. Ed. 2d 182.

NEW TRIAL.

Justice MEYER dissenting.

I dissent from the majority's decision to grant a new trial for *Cage* error essentially for the same reasons I expressed concerning that issue in my dissent in *State v. Montgomery*, 331 N.C. 559, 417 S.E.2d 742 (1992). Defendant here did not object to the reasonable doubt instruction given by the trial judge.

*Cage* does not dictate that we find reversible error in the instant case. In *Cage*, the Supreme Court found error in the Louisiana trial court's reasonable doubt instruction, stating:

STATE v. BRYANT

[334 N.C. 333 (1993)]

The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. *When those statements are then considered with the reference to "moral certainty,"* rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage v. Louisiana*, 498 U.S. 39, 41, 112 L. Ed. 2d 339, 342 (1990) (emphasis added).

In reading *Cage* broadly, the majority opinion deviates from the clear dictate of our own prior case law as well as from that of virtually every other appellate court in the land that has considered the matter. *See Gaskins v. McKellar*, --- U.S. ---, 114 L. Ed. 2d 728 (Stevens, J., concurring in denial of writ of certiorari and acknowledging that *Cage* is to be read narrowly and emphasizing the critical import of the "grave uncertainty" language), *reh'g denied*, --- U.S. ---, 115 L. Ed. 2d 1098 (1991); *see also Ex parte White*, 587 So. 2d 1236 (Ala. 1991) (finding permissible an instruction that failed to equate reasonable doubt with "grave uncertainty" and "actual substantial doubt" and that did not require jury to find guilt to a "moral certainty"), *cert. denied*, --- U.S. ---, 117 L. Ed. 2d 142, *reh'g denied*, --- U.S. ---, 117 L. Ed. 2d 655 (1992); *Smith v. State*, 588 So. 2d 561 (Ala. Crim. App. 1991) (finding no error in use of terms "actual and substantial doubt" and "moral certainty"); *Adams v. State*, 587 So. 2d 1265 (Ala. Crim. App. 1991) (finding permissible use of terms "actual and substantial doubt" and "moral certainty"); *Fells v. State*, 587 So. 2d 1061 (Ala. Crim. App. 1991) (finding use of term "moral certainty" to be proper); *People v. Jennings*, 53 Cal. 3d 334, 807 P.2d 1009, 279 Cal. Rptr. 780 (same), *cert. denied*, --- U.S. ---, 116 L. Ed. 2d 462 (1991); *Bradford v. State*, 261 Ga. 833, 412 S.E.2d 534 (1992) (instruction permissible when court used only "moral and reasonable certainty"); *Potts v. State*, 261 Ga. 716, 410 S.E.2d 89 (1991) (instruction permissible when court did not equate reasonable doubt with "grave uncertainty" or "actual substantial doubt"), *cert. denied*, --- U.S. ---, 120

L. Ed. 2d 908, *reh'g denied*, --- U.S. ---, 121 L. Ed. 2d 233 (1992); *State v. Rhoades*, 121 Idaho 63, 80, 822 P.2d 960, 977 (1991) (Johnson, J., concurring) (instruction permissible with "actual doubt"), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 119 (1993); *Commonwealth v. Beldotti*, 409 Mass. 553, 567 N.E.2d 1219 (1991) (instruction permissible with "moral certainty" language); *State v. Bernard*, 820 S.W.2d 674 (Mo. Ct. App. 1991) (instruction permissible where no *Cage* language used), *rev'd on other grounds*, 849 S.W.2d 10 (Mo. 1993) (en banc); *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991) (instruction permissible when "moral uncertainty" and "actual and substantial doubt" used); *Lee v. State*, 107 Nev. 507, 813 P.2d 1010 (1991) (instruction permissible with "actual and substantial doubt" language); *Lord v. State*, 107 Nev. 28, 806 P.2d 548 (1991) (same); *State v. Gonzalez*, 822 P.2d 1214 (Utah 1991) (instruction proper when contains none of the language condemned in *Cage*).

In sum, I believe that the main opinion errs in its conclusion that the reasonable doubt instruction tendered by the trial court was error requiring a new trial.