26117. KRIST v. THE STATE.

: SUBMITTED OCTOBER 14, 1970—DECIDED DECEMBER 3, 1970— REHEARING DENIED DECEMBER 17, 1970.

Gary Steven Krist, alias George Gary Deacon, Arthur Horowitz, George S. Price and Dr. Johnsen Rarik, was indicted for kidnapping for ransom.

The evidence adduced on the trial in the Superior Court of DeKalb County showed the following: Krist, going under the alias of Deacon, was employed as a technician in the Division of Ma-

rine Geology and Geophysics in the Marine Science Institute at the University of Miami (Florida). At the same time, Ruth Eisemann Schier was a graduate student in said institute. Early on December 14, 1968, Krist and Schier checked into the Rodeway Inn, in DeKalb County, and registered as Dr. and Mrs. Johnsen Rarik from Boston, giving his employer as the Massachusetts Institute of Technology. They were seen that day in the Rich Building at Emory University, where Barbara Mackle attended classes and Krist was overheard making an inquiry over the telephone as to the whereabouts of Barbara and was overheard to tell Schier that Barbara was at the Rodeway Inn. On the afternoon of the 14th, Krist and Schier checked out of the motel and registered at the Clermont Hotel on Ponce de Leon Avenue near Sears Roebuck. On the same day they stopped at several service stations near the intersection of Clairmont Road and Buford Highway and Krist made inquiry as to some isolated spot where he could conduct a "scientific experiment." They were traveling in a blue Volvo station wagon and were carrying a large canvas-covered box in the rear. They were directed toward the Norcross area, in which vicinity Barbara Mackle was later buried alive. During the occurrence of the aforesaid events, Barbara was ill with a bad case of influenza; her mother, Mrs. Robert Mackle, had come from Florida to Atlanta to nurse her and they had engaged a room at the Rodeway Inn for this purpose. On December 17, at about 4 a.m., they were awakened by a knocking on their motel room door. When Mrs. Mackle asked who was there, a man's voice outside said he was a detective and that a boy driving a white Ford had been in an automobile accident, was in the hospital and was asking for the Mackles. As Barbara's boy friend owned a white Ford, Mrs. Mackle opened the door. Krist and Schier then pushed their way into the room and Krist brandished a rifle. Mrs. Mackle was tied up and gagged. Barbara was then carried in her nightgown to a Volvo automobile, which Krist drove while Barbara and Schier were in the back seat. Finally, after going over a bumpy road, Krist stopped the car, then explained to Barbara, "I suppose you know why we are here . . . We are kidnapping you . . . We are asking for quite a lot of money." Krist and Schier then placed Barbara in a box, or capsule, under the ground, after giving her

instructions on the use of the mechanism inside the capsule, buried her and left her there. At approximately 8 a.m. on December 17, Krist and Schier checked out of the Clermont Hotel. At approximately 9:10 a.m. a call was received at the home of Robert Mackle, Barbara's father, in Coral Gables, Florida, instructing that a search be made on a corner of the lot, under a certain palm tree. A search was made and the ransom note was found there, buried under a rock. During the day of the 17th and the 18th, the ransom money was accumulated, being $500,000 in twenty-dollar bills, placed in a suitcase and delivered to Mr. Mackle. On December 19, the F. B. I. intercepted a letter addressed to Mr. Mackle at his home in Coral Gables. It contained a gold ring of Barbara's and a polaroid photograph of her, which Krist had taken just prior to her burial. Earlier on the 19th, at 3:45 a.m., Mr. Mackle received a telephone call at his home from a man whose voice was identified as that of Krist, telling Mackle to take the money to the end of Fair Isle Street and leave it in a box marked with a blinking light. He then took the suitcase containing the money to the specified location and left it there, although he was unable to find a box or light. At 4:41 a.m. Krist telephoned the Mackle home and complained to Mackle's brother, Frank, that the money had not been left where instructed; he was assured that Robert Mackle had left with the money and was proceeding to the specified spot. After Mr. Mackle left the money at Fair Isle Street, he returned home. At approximately 4:45 or 5 a.m. two Miami policemen observed two persons coming out of some woods in the vicinity where Mackle had left the money and approaching a Volvo station wagon, identified as Krist's. When the police tried to stop them, they ran, dropping the suitcase containing $500,000, and could not be apprehended. The money was turned over to the F. B. I. and determined to be the ransom money. In the Volvo station wagon were found, among other items, the roll of polaroid film with which Krist had photographed Barbara, two airline tickets for passage to Las Vegas, a key from the Rodeway Inn and a plain sheet of paper used in a typewriter as backing for the ransom note. In the afternoon of December 19, a driver for the Yellow Cab Co. in Miami picked Krist up at the Miami International Airport and carried him to several car rental places while

Krist attempted to find one which would rent him a car for a small amount of money. Krist finally succeeded in renting a green Ford automobile. At approximately 10:30 p.m., December 19, Krist telephoned Father John Mulcahy at the Little Flower Catholic Church rectory and stated that he was the one who had called earlier about an important matter. He then proceeded to give instructions as to where Robert Mackle should take the money for the second pay-off attempt. This was on a small dirt road running off the Tamiami Trail Highway. In accordance with those instructions the suitcase containing the $500,000 was left at the specified location by a friend of Robert Mackle, who observed an old model car parked nearby. At about 8:30 or 9 a.m. on December 20, Krist went to D & D Marine, Inc., in West Palm Beach, driving the green Ford. Going under the name of Arthur Horowitz, he purchased a boat and motor, stating that he wanted it made ready immediately and paying $2,239 in cash. This included 109 twenty-dollar bills determined to be part of the ransom money. After asking for directions as to how to get to sea, he headed out in the boat. The rented Ford was stored nearby, and in the trunk was found the empty suitcase in which the ransom had been delivered on the second attempt. At approximately 10:30 a.m. on December 21, a Coast Guard airplane carrying F. B. I. agents spotted Krist's boat on the intercoastal waterway in the vicinity of Fort Myers. The boat was observed until a helicopter carrying F. B. I. agents could reach the scene, at which time Krist beached the boat on Hog Island and fled inland. Agents found a duffle bag full of money in the boat, totalling $479,000 in twenty-dollar bills determined to be part of the ransom money. After a search throughout the day and half of the night, Krist was arrested, with $18,000 of the ransom money in his possession. In the meantime, in response to a telephone call, F. B. I. agents went to the Norcross area to search for Barbara Mackle on the afternoon of the 21st. They found her at approximately 4:10 p.m., buried in the capsule in a wooded area several miles from Norcross, in a dehydrated and extremely weakened condition.

The defendant was convicted and sentenced to life imprisonment in the State penitentiary. He appeals from this judgment and the judgment overruling his amended motion for a new trial.

*Mobley Childs, James R. Venable, Margaret Hopkins,* for appellant.

*Richard Bell, District Attorney, Eugene Highsmith, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, William R. Childers, Jr., Assistant Attorneys General,* for appellee.

FELTON, Justice. ■ The court did not err in overruling the defendant's motion to dismiss the indictment or in charging the jury on the offense designated as "kidnapping for ransom," on the contended ground that such offense is not defined by statute.

*Code Ann.* § 26-1601 (Cobb, 788; as amended, Ga. L. 1953, Nov. Sess., pp. 99, 100) defines kidnapping as follows: "Every person who shall forcibly abduct or steal away any person, without lawful authority or warrant, and hold said person against his will, shall be guilty of kidnapping." *Code* § 26-1603, as amended by Ga. L. 1937, pp. 489, 490, provides the punishment for kidnapping as follows: "Kidnapping shall be punishable by imprisonment and labor in the penitentiary for not less than four years, nor more than seven years: Provided, that *kidnapping for ransom* shall be punishable by death: Provided, however, the jury upon the trial of said case may recommend that the defendant be punished with life imprisonment." (Emphasis supplied.)

"For any particular act or conduct to constitute a criminal offense the statute defining the offense, or some other law of the State must in express terms declare such conduct to be a violation of the law *or provide that it be punished as a criminal offense. In the latter event the conduct in question is by necessary implication designated a crime."* (Emphasis supplied.) *Wood v. State,* 219 Ga. 509, 511 (134 SE2d 8). From reading in pari materia *Code* §§ 26-1601 and 26-1603, it is clear that the legislature intended to establish a higher grade of the offense of kidnapping, grounding it in the definition of kidnapping (§ 26-1601) and merely adding the additional element of the purpose of ransom. "Statutory language in defining a criminal offense which conveys a definite meaning as to proscribed conduct when measured by common understanding and practice satisfies due process requirements. United States v. Petrillo, 332 U. S. 1 (67 SC 1538, 91 LE 1877)." *Jones v. State,* 219 Ga. 848, 850 (136 SE2d 358). The word "ransom" requires no

definition. It is not a term of art, technical, or abstract in definition, but conveys a definite meaning within the standards of the Petrillo case, supra. As was pointed out in *Jones,* supra, any person of common intelligence (and particularly one who had the intelligence to plan and execute such an elaborate scheme as was here perpetrated) may determine whether the particular acts and conduct charged him with improper conduct, i. e., kidnapping for ransom.

Enumerated errors 2, 19, 20, 21, 22, 23, 24 and 25 are without merit.

■ The evidence, as summarized in the statement of facts hereinabove, amply authorized the verdict of guilty. Every element of the offense of kidnapping for ransom was proven. It was shown that the defendant did "forceably abduct or steal away" the person of Barbara Mackle, "without lawful authority or warrant," from DeKalb County, Georgia, "and send or convey such person beyond the limits of the . . . county [i. e., to Gwinnett County, Georgia] . . against [her] will" and that he demanded and received a ransom in return for revealing the location where he had buried her alive. The defendant was linked with the commission of that offense by the testimony of numerous witnesses who made positive identification of him. Enumerated error 1 is without merit.

■ In enumerated errors 15 and 16 the appellant attacks the search of his automobile upon two grounds: (1) that it was unlawfully seized and taken to the F. B. I. headquarters in Miami, and (2) that the search warrant obtained afterward is invalid. The facts, that two individuals, one of whom had been armed, had been seen near the automobile and that a suitcase containing the ransom money from the kidnapping had been discovered near the automobile, would have supported probable cause for the issuance of a search warrant to search the automobile where it was parked. Williams v. United States, 412 F2d 729 (5th Cir., 1969). Under the circumstances, the law enforcement officers gained lawful custody of the automobile where it was parked, and appellant does not show that its seizure and transfer deprived him of any constitutional right or altered the legality of the custody, especially since no search was made thereof until they had obtained a valid search warrant, which is a part of the record in this case. Since

the automobile was searched in a lawful and reasonable manner, the items seized during that search were admissible in evidence and the court, therefore, did not err in admitting them.

■ Enumerated error 17 contends that the venue of the case was not in DeKalb County, Georgia, since some incidents in the commission of the crime occurred in other counties and the ransom was paid and received in the State of Florida. "All criminal cases shall be tried in the county where the crime was committed. . ." Art. VI, Sec. XIV, Par. VI of the Constitution of 1945 (*Code Ann.* § 2-4906). See also *Code* § 27-1101. Prior to its amendment in 1953, *Code* § 26-1601 provided as follows: "Every person who shall forcibly abduct or steal away any person, without lawful authority or warrant, *from this State or any county thereof, and send or convey such person beyond the limits of the State or a county thereof* against his will, shall be guilty of kidnapping." (Emphasis supplied.) Although we have found no Georgia case directly ruling on the venue of criminal prosecutions for kidnapping for ransom, all of the Georgia cases involving kidnapping have been tried in the county in which the victim was seized and the question of venue apparently was not raised. Ga. L. 1953, Nov. Sess., pp. 99, 100, amended § 26-1601, as the preamble to the Act states, ". . . so as to eliminate therefrom the requirement, as one element of the offense, that the person kidnapped be taken beyond the limits of the State or county . . ." If venue was in the county from which the victim was seized even while the statute made the offense not complete until the victim was taken or sent beyond the limits of such county, then a fortiori, venue is still in such county now that the crime can be committed wholly within one county. This is in accordance with the general rule in other jurisdictions. See 22 CJS 463, Criminal Law, § 185 (3). Furthermore, a showing that ransom was actually paid is not necessary to constitute the offense, but is one method of demonstrating the intent of the defendant at the time the victim's person is seized. This enumerated error is without merit.

■ Enumerated error 18 complains of the following excerpt from the charge of the court: "I charge you further that flight, if proved in certain circumstances, may be considered in the trial of a person charged with the commission of a crime, you being the judges

of whether or not any flight has been proved, the law being that flight, if any, *and similar actions,* if proved—and you are the judges of whether or not any flight has been proved from which an inference of guilt may be deducted [sic]—may be considered by the jury, but flight is subject to explanation." (Emphasis supplied.) The inclusion of the words, "and similar actions," without an instruction to the jury as to what specific similar actions they were allowed to consider, was not harmful or prejudicial, as contended. See *Woodruff v. State,* 204 Ga. 17 (2) (48 SE2d 885); *Kalb v. State,* 195 Ga. 544, 550 (25 SE2d 24). This enumerated error is without merit.

■ "Grounds of a motion for a new trial which are not argued in this court are deemed to have been abandoned, whether enumerated as error or not." *Jackson v. State,* 225 Ga. 790 (6) (171 SE2d 501). For this reason, enumerated errors 3 through 14, inclusively, are not ruled on.

The trial court did not err for any of the reasons urged in entering the judgment on the verdict and overruling the amended motion for a new trial.

*Judgment affirmed. All the Justices concur.*