**STATE ex rel. Dale PATTERSON, Plaintiff,**

v.

**Alvin C. RANDALL, Judge, Circuit Court of Jackson County, Defendant.**

No. 63506.

Supreme Court of Missouri, En Banc.

Aug. 23, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Kevin Locke, Asst. Public Defenders, Kansas City, for plaintiff-relator.

Albert A. Riederer, Pros. Atty., Patrick B. Hall, Asst. Pros. Atty., Kansas City, for defendant-respondent.

HIGGINS, Judge.

Dale Patterson seeks to prohibit the trial court from permitting the State of Missouri to seek the death penalty upon his retrial for capital murder. He successfully appealed a conviction arising from a prior trial in which the State elected not to seek the death penalty. He asserts that such election in the first trial bars pursuit of that penalty upon his retrial. He contends that such a second trial would subject him to impermissible "prosecutorial vindictiveness" in violation of his right to due process, under U.S.Const. amend. XIV; would subject him to cruel and unusual punishment in the form of arbitrary and capricious prosecutorial determination to seek the death penalty, under U.S.Const. amend. VIII; and the State's election not to seek the death penalty in the first trial constitutes a waiver of the death penalty on retrial. The preliminary writ of prohibition is made absolute.

Dale Patterson was convicted by a jury of capital murder. § 565.001, RSMo 1978. In that trial the State announced it would not ask for the death penalty; Patterson was sentenced to life imprisonment. § 565.008.-1, RSMo 1978. Patterson appealed to this Court and a new trial was ordered because of prosecutorial misconduct in failing to provide Patterson with discoverable material regarding concessions made to Timothy Woodcox, a State's witness, in return for his testimony against Patterson. *State v. Patterson*, 618 S.W.2d 664 (Mo. banc 1981). On remand the State filed its notice of intent to seek the death penalty. *See* § 565.006.2, RSMo 1978. Patterson moved the trial court to strike this notice. The parties agree the only change between this and the first trial is that the present trial attorney for the prosecution believes in the death penalty whereas the original trial attorney did not. After hearing, the court overruled Patterson's motion to strike thereby permitting the State to seek the death penalty.

Patterson's first claim, dispositive of this case, is that the trial court is exceeding its jurisdiction by allowing the State to seek the death penalty upon retrial in violation of Patterson's right to due process. Simply stated, this right holds punishment of a ". . . person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " *United States v. Goodwin*, —— U.S. ——, ——, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604). "[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Id.* —— U.S. at ——, 102 S.Ct. at 2488; *See Bordenkircher v. Hayes, supra; Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The policy supporting the bar on imposing a penalty on the exercise of one's right to challenge his criminal conviction is that:

> . . . vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation . . . .

*North Carolina v. Pearce, supra*, at 725, 89 S.Ct. at 2080. *See Blackledge v. Perry, supra*. Thus a sentencing judge may not impose a more severe sentence and the State may not charge a defendant with a greater offense unless it affirmatively appears no vindictiveness exists. "[T]he due process clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only those that pose a

realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry, supra,* 417 U.S. at 27, 94 S.Ct. at 2102. Once established, the presumption of vindictiveness may be overcome by objective information justifying the increased sentence or charge. *United States v. Goodwin,* —— U.S. ——, —— n.8, 102 S.Ct. 2485, 2490 n.8, 73 L.Ed.2d 74 (1982).

In order for Patterson to succeed on his due process argument, he must show a realistic likelihood of "prosecutorial vindictiveness," after which the State must fail to overcome the burden of proving by objective information a justification for the increased sentence or charge.

■ Whether the State shall seek the death penalty in a capital murder case is initially within the discretion of the State. Because of the severity of this penalty, the potential of its imposition normally will have the effect of creating apprehension, even during the original trial. Given this, apprehension must necessarily be created in the defendant who would appeal successfully his conviction and then be faced with the State's election to seek the death penalty on retrial when it was waived at the first trial. Because due process of law prohibits the State from responding to a person's invocation of his right of appeal by bringing a more serious charge against a defendant prior to his new trial, the same is necessarily true of subjecting the defendant to a more serious penalty subsequent to his successful appeal. *Blackledge v. Perry, supra,* decided the former; the latter is therefore also true. *See People v. Walker,* 84 Ill.2d 512, 50 Ill.Dec. 718, 419 N.E.2d 1167 (1981).

■ The State attempts to distinguish *Blackledge v. Perry, supra,* by arguing that only the range of punishment has changed whereas in *Blackledge,* the offense charged was increased. The opinion in that case negates this distinction:

A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.

*Id.* 417 U.S. at 28, 94 S.Ct. at 2102–03. It is the increased penalty associated with the charge that makes it "more serious."

In *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Supreme Court ruled that the life sentence is effectively a "lesser included" penalty to the death sentence to the extent that the imposition of life imprisonment at the first trial acquits the defendant of the death sentence and the Double Jeopardy Clause thereby bars the State from seeking the death penalty at the second trial. Under this decision, the State cannot persuade that life imprisonment and the death penalty are within a single range of punishment for capital murder.

The State also argues that because it is the jury and not the prosecution which may assess the death penalty, that a second, new jury eliminates any reasonable fear of vindictiveness by judge or prosecution, citing *Chaffin v. Stynchcombe, supra.* In that case the first jury sentenced the defendant to 15 years; the second jury imposed a life sentence. A distinction between this case and *Chaffin v. Stynchcombe, supra,* is apparent:

The jury instructions on the permissible range of punishment were the same at each trial and the prosecutor at the second trial urged the jury to sentence petitioner to death, as he had in his closing argument at the prior trial. This time, however, the jury returned a sentence of life imprisonment.

*Id.* 412 U.S. at 19–20, 93 S.Ct. at 1979. Contrary to the present case, *Chaffin* involved no variance in the prosecution's decision concerning the severity of the penalty sought. Clearly, a realistic likelihood of vindictiveness is present in this case.

Plaintiff's establishment of a *prima facia* case of prosecutorial vindictiveness places the burden on the State to demonstrate that no vindictive motive existed. In order to meet this burden the State must show objective, on-the-record explanations which rebut the realistic likelihood of vindictive-

ness. The burden increases greatly when the likelihood of vindictiveness arises after a conviction. In *United States v. Goodwin* the Supreme Court noted:

> ... once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Goodwin, supra,* —— U.S. at ——–——, 102 S.Ct. at 2493. In *Blackledge, supra,* the Court indicated the degree of proof required of the State in such cases when it held the result would have been different had the State shown "that it was impossible to proceed on the more serious charge at the outset. . . ." *Blackledge,* 417 U.S. at 29 n.7, 94 S.Ct. at 2103 n.7.

The State offers two explanations to meet this burden. First, it asserts that the original prosecutor did not believe the death penalty should be imposed under any circumstance; the present prosecutor does not share this belief and would have the jury consider the death penalty. This, according to the State, negates the presumption of vindictiveness. While this revelation may explain the State's failure to seek the death penalty at the first trial, it falls short of meeting the burden placed on the State. It indicates nothing more than a mistake or choice on the part of the State in assigning a capital murder case to a prosecutor who does not believe in pursuing the death penalty. Such an explanation falls short of meeting the requirements set out in *Blackledge, supra. See also United States v. Goodwin, supra,* —— U.S. at —— n.8, 102 S.Ct. at 2490 n.8.

Next, the State suggests that the new prosecutor could not have a vindictive motive in the second trial because it was the original prosecutor's case which was reversed. This suggests that only the prosecutor involved in the reversal could possess a vindictive motive in seeking a greater penalty at the second trial. In *Blackledge,* a prophylactic rule analogous to that set out in *Pearce* was adopted because of the prosecutor's ". . . considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and [could] even result in a formerly convicted defendant's going free." *Blackledge, supra,* 417 U.S. at 27, 94 S.Ct. at 2102. The State would have this Court limit *Blackledge* to a consideration of whether a reasonable likelihood of vindictiveness exists with the individual prosecutor who is trying the case. Logic dictates, however, that the intent of both the individual prosecutor and that of the prosecuting attorney's office on behalf of the State must be considered when determining the existence of a realistic likelihood of vindictiveness. Clearly, the prosecuting attorney's office has a paramount interest in reducing potential ". . . increased expenditures of prosecutorial resources before the defendant's conviction becomes final. . . ." *Blackledge, supra,* at 29, 94 S.Ct. at 2103. Therefore, that the present prosecutor had no involvement with the first trial does not constitute objective evidence justifying the current prosecutor's intention to seek the death penalty.

The State has failed to meet the burden established in *Blackledge.* Because of this failure the Court must presume ". . . the state might be retaliating against the accused for lawfully attacking his conviction." *Blackledge, supra,* 417 U.S. at 26–28, 94 S.Ct. at 2101–2103. *See also Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1977). Thus the prosecutor's election to seek the death penalty at Patterson's second trial constitutes a due process violation. The proposed action of the trial court to allow such a violation of due process is not within its jurisdiction and must be prohibited. *See State v. Edwards,* 574 S.W.2d 410, 411 (Mo. banc 1978)

(violation of due process resulted in preliminary writ being made absolute); *Simanek v. Berry*, 597 S.W.2d 718 (Mo.App.1980).

The preliminary writ in prohibition is made absolute.

DONNELLY, C. J., WELLIVER and MORGAN, JJ., concur.

BARDGETT, J., concurs and concurs in separate concurring opinion filed.

SEILER, J., concurs and concurs in separate concurring opinion of BARDGETT, J.

RENDLEN, J., concurs in result.

BARDGETT, Judge, concurring.

I concur in the principal opinion but also believe that *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), prohibits the state from seeking the death penalty in every instance where (1) the jury in the first trial rejected the death penalty, or (2) where the state did not seek the death penalty at the first trial. Both constitute double jeopardy.