## S95A1093. GRIFFIN v. THE STATE.
(464 SE2d 371)

HUNSTEIN, Justice.

Michael David Griffin was indicted in 1992 in McIntosh County for the murder of Jenny Rhames. The State did not seek the death penalty. After Griffin's trial ended in a mistrial, he was reindicted for Rhames' murder. The State again declined to seek the death penalty. The trial court denied Griffin's plea of former jeopardy as to the second indictment and Griffin appealed to this Court. While that appeal was pending, Griffin was indicted in Thomas County in a two-count indictment charging Griffin with kidnapping with bodily injury and murder of Rhames. The State announced its intention to seek the death penalty in that case. We granted Griffin's application for interim appeal pursuant to OCGA § 17-10-35.1. We hold that the murder count of the Thomas County indictment must be quashed because at the time of his indictment in Thomas County, that county lacked the right to exercise jurisdiction. We uphold the indictment for kidnapping in Thomas County. We further hold that the State may reindict Griffin for the murder of Rhames in Thomas or McIntosh County and may seek to have Griffin sentenced to death.

1. Griffin first contends that the trial court erred by denying his motion to quash the Thomas County murder indictment. We agree.

Where two or more courts have concurrent jurisdiction of the same offense, the court which first acquires jurisdiction of the prosecution retains it to the exclusion of others while that case is pending, thereby preempting jurisdiction for all offenses originating in the same course of criminal conduct. See *McAuliffe v. Outz*, 139 Ga. App. 62, 64 (227 SE2d 807) (1976); *Nobles v. State*, 81 Ga. App. 229, 230

(58 SE2d 496) (1950). McIntosh County held exclusive jurisdiction of the offense at issue when the State indicted Griffin in Thomas County. Therefore, when Griffin was indicted for murder in Thomas County, that county had no authority to exercise jurisdiction, and the murder count of that indictment must be quashed.

Our holding is not affected by the fact that charges currently are pending against Griffin only in Thomas County. The appeal that was pending at the time Griffin was indicted in Thomas County was resolved in *Griffin v. State*, 264 Ga. 232 (443 SE2d 612) (1994), in which we held that the McIntosh County Superior Court did not abuse its discretion in declaring a mistrial and that jeopardy did not attach so as to bar a retrial. After this Court remitted the case to the McIntosh County Superior Court, the McIntosh County indictment was dismissed through nolle prosequi. Hence, because McIntosh County Superior Court, the court first acquiring jurisdiction, has voluntarily and legally dismissed the prosecution, the Thomas County Superior Court now has the opportunity to obtain for the first time the right to exercise its jurisdiction as to the murder charge, since an accused has no vested rights to be tried in any particular court. *Nobles*, supra. However, the Thomas County Superior Court lacked the right to exercise jurisdiction at the time this case began due to the pendency of proceedings on the same offense in McIntosh County. The error of proceeding initially without the right to exercise jurisdiction is not cured by the subsequent dismissal of the McIntosh County case. See 22 CJS 215, Criminal Law, § 176 ("jurisdiction of a court depends on the state of facts existing at the time it is invoked"). To permit this action to proceed under the present indictment would erode the protection of criminal defendants from having to defend themselves simultaneously in two State courts for the same alleged offense.

The Thomas County indictment must be quashed for a further reason. The day before Griffin's indictment in Thomas County, Griffin had filed an appeal with this Court of the denial by the McIntosh County Superior Court of his plea of former jeopardy. While that appeal was pending, the State clearly could not continue to prosecute Griffin in McIntosh County. See *Chambers v. State*, 262 Ga. 200, 202 (415 SE2d 643) (1992). To do so would deny Griffin protection from being forced to "run the gauntlet" a second time before his claim of double jeopardy could be reviewed. See *Abney v. United States*, 431 U. S. 651, 662 (97 SC 2034, 52 LE2d 651) (1977); *Patterson v. State*, 248 Ga. 875, 876 (287 SE2d 7) (1982). Prosecutions of the same defendant in different counties of the same state "must be viewed as the acts of a single sovereign under the Double Jeopardy Clause." *Brown v. Ohio*, 432 U. S. 161, 164, n. 4 (97 SC 2221, 53 LE2d 187) (1977). Therefore, the State as one sovereign may not circumvent the clear rule barring it from proceeding in one county by simply reindicting

Griffin in another.

The rule we articulate today imposes no undue burden upon the State. Nothing bars the State from reindicting Griffin for murder in Thomas County or in McIntosh County. If Griffin is reindicted for murder in Thomas County, either party may move to incorporate the pre-trial record accumulated under the present indictment.

2. Under the facts in this case, venue over the murder charge may lie in either Thomas or McIntosh Counties, OCGA § 17-2-2, but venue over the kidnapping charge lies solely in Thomas County. See *Potts v. State*, 261 Ga. 716, 720 (2) (410 SE2d 89) (1991); *Krist v. State*, 227 Ga. 85 (4) (179 SE2d 56) (1970). Based on these facts, Griffin argues that the State violated the "single prosecution" requirement in OCGA § 16-1-7 (b) when it initially brought the murder charge alone in McIntosh County rather than bringing the murder charge *together with* the kidnapping charge in Thomas County. Hence, Griffin contends that Count Two of the present indictment, charging him with kidnapping with bodily injury, is procedurally barred by OCGA § 16-1-7 (b). We do not agree.

OCGA § 16-1-7 (b) (formerly Code Ann. § 26-506) requires all crimes arising from the same conduct to be prosecuted in a "single prosecution" provided they are in the same jurisdiction and are known to the prosecutor, unless the court in the interest of justice orders separate trials.[1] *State v. Estevez*, 232 Ga. 316, 318-319 (206 SE2d 475) (1974). OCGA § 16-1-7 expands the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions, *State v. Estevez*, supra, because it "protects a defendant from multiple prosecutions arising from the same conduct in situations where constitutional double jeopardy would not be a defense." *McCannon v. State*, 252 Ga. 515, 516-517 (315 SE2d 413) (1984). We have recognized that OCGA § 16-1-7 (b) embodies the procedural aspect of double jeopardy,[2] *State v. Estevez*, supra, in that it "prevent[s] an accused from being unduly harassed by or threatened by successive criminal prosecutions." Id. at 319.

---

[1] OCGA § 16-1-7 (b) provides:
If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution.

[2] OCGA § 16-1-7 (a) embodies the substantive aspect of double jeopardy: it limits multiple *convictions* that may be imposed for such crimes. *State v. Estevez*, supra. The substantive aspect thus calls into question whether one crime is included, by law or by fact, in another charged crime. Although two or more crimes may "arise from the same conduct," that does not mean a defendant cannot be convicted of each crime. This Court in *Potts v. State*, supra, set forth the applicable constitutional tests to determine if the crimes are included. *State v. Sallie*, 206 Ga. App. 732 (427 SE2d 11) (1992) represents another method in which crimes may have to be deemed included, i.e., where the defendant is convicted under an indictment or accusation drawn in such a manner as to bar further convictions.

It is very rare that a situation arises in which venue over a criminal charge can be had in more than one county. Even under such rare circumstances, however, nothing in the plain language of OCGA § 16-1-7 (b) and the case law interpreting it[3] requires that prosecution of a "dual venue" criminal charge must occur in that one county where other criminal charges arising out of the same multi-county crime spree must be prosecuted. As recognized in *Henderson v. State*, 227 Ga. 68, 75 (179 SE2d 76) (1970), "the legislature used language in subsection (b) making the prosecution together of multiple charges mandatory *where rules relating to venue permit* and the crimes are known to the proper prosecuting officer." (Emphasis supplied.) OCGA § 16-1-7 (b) is a "single venue" rule which expanded procedural due process in this state to bar multiple prosecutions only within the same jurisdiction. We will not construe it as an expansion of procedural due process that unduly restricts the State's method of prosecuting multi-county crime sprees involving these rare, "dual venue" crimes.

While the murder charge cannot be brought in both Thomas and McIntosh Counties, see Division 1, supra, insofar as OCGA § 16-1-7 (b) is concerned, the kidnapping charge in Thomas County is not affected by the fact that the State sought to prosecute Griffin on the murder charge initially in McIntosh County because McIntosh County is a separate jurisdiction. Should the State decide to proceed with the murder charge in Thomas County, there is, statutorily speaking, no procedural double jeopardy bar to Thomas County also prosecuting Griffin for the kidnapping charge, so long as Thomas County comports with the requirement that there be a "single prosecution."[4]

Finally, contrary to Griffin's argument, prosecution of the kidnapping charge in Thomas County does not constitute vindictiveness of any kind. See *Potts v. State*, supra, 261 Ga. at (1), in which this Court upheld Potts' death sentence in Cobb County for the kidnapping of Michael Priest even though Potts had also been sentenced to death in Forsyth County for Priest's murder. Here, as in *Potts*, the kidnapping and murder charges are not the "same" for double jeopardy purposes;[5] hence, absent any unartfulness in the drawing of the

[3] Compare *State v. Sallie*, supra (crimes committed in two separate counties could have been prosecuted in the separate counties, but for the unartful drawing of the indictment in one county which "used up" for substantive double jeopardy purposes all the facts that would have supported the prosecution in the other county of the crimes those facts represented); *Powe v. State*, 257 Ga. 563 (361 SE2d 811) (1987) (multiple crimes arose out of the same conduct in the same jurisdiction, but the prosecutor in one court of that jurisdiction had no knowledge of charges pending in another court within that same jurisdiction).

[4] Although the charges must be prosecuted together, it is still within the trial court's authority to sever the charges for separate trials in the interest of justice. OCGA § 16-1-7 (c).

[5] Because the indictment charging kidnapping with bodily injury recites an injury inflicted on the victim *other than* the injury that caused the victim's death, the record before

McIntosh murder indictment, there is no statutory or constitutional bar to the Thomas County prosecution for the kidnapping of Jenny Rhames.

3. Griffin contends the trial court erred by denying his plea in bar to prevent the State from seeking the death penalty in Thomas County, because the State specifically waived seeking the death penalty for the same murder charged here both in the original prosecution in McIntosh County and upon subsequent reindictment there. This issue is one of first impression.[6]

Double jeopardy precludes the State from seeking the death penalty on retrial if there was insufficient evidence at the original trial to support the aggravating circumstances or if the jury voted to impose a life sentence. *Brooks v. State*, 259 Ga. 562 (1) (385 SE2d 81) (1989). See *Ward v. State*, 239 Ga. 205 (5) (236 SE2d 365) (1977). Griffin argues that by failing to introduce aggravating circumstances at the original trial, the State conceded their absence and thus fixed at life imprisonment the maximum sentence which can be imposed on Griffin for the murder of Jenny Rhames. However, we have held that where a death sentence has been reversed and there was no finding of insufficient evidence to support the aggravating circumstances, the State may introduce evidence of aggravating circumstances not presented to the first jury. *Crawford v. State*, 256 Ga. 57 (2) (344 SE2d 215) (1986); *Spraggins v. State*, 255 Ga. 195 (336 SE2d 227) (1985). In keeping with our prior decisions, we decline to hold that the State conceded the absence of any aggravating circumstances by failing to present them as such in the first trial.[7]

Griffin next argues, relying upon *Blackledge v. Perry*, 417 U. S. 21 (I) (94 SC 2098, 40 LE2d 628) (1974), that an inference of vindictiveness is created by the State's conduct in seeking the death penalty after mistrial, reindictment, and appeal of the denial of the plea of former jeopardy. We disagree. In *Blackledge*, after the defendant successfully appealed his misdemeanor conviction, the prosecutor reindicted him on a felony charge for the same conduct and, as a result,

---

this Court does not establish that the kidnapping is an included offense as a matter of fact, see *Potts v. State*, supra, 261 Ga. at (1), and we have recognized that these crimes are not included as a matter of law. *Potts v. State*, 241 Ga. 67 (11) (243 SE2d 510) (1978).

[6] Our opinion in *Dalton v. State*, 263 Ga. 138, 140 (429 SE2d 89) (1993), is not on point. In *Dalton* we merely held that, where the State had unintentionally failed to provide timely notice of its intent to seek the death penalty and where trial had not yet commenced, the State could seek the death penalty on reindictment.

[7] The State in the present action alleged the following aggravating circumstances: (1) that the murder was committed while Griffin was engaged in the commission of another capital felony or aggravated battery, OCGA § 17-10-30 (b) (2); (2) that Griffin committed the murder for the purpose of receiving a thing of monetary value, id. at (b) (4); and (3) that the murder was outrageously vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim. Id. at (b) (7).

the defendant received a harsher sentence than he had originally received. Id. 417 U. S. at 22-23. The U. S. Supreme Court concluded as was done earlier that the opportunity for prosecutorial vindictiveness after a successful appeal is such that due process requires application of a rule[8] creating a rebuttable presumption of vindictiveness when a judge subjects a criminal defendant to greater punishment after a successful appeal. Id. 417 U. S. at 27. In elaborating on the need to employ a presumption of prosecutorial vindictiveness, the *Blackledge* court did not focus on the prosecutor's mere motivation to penalize the individual defendant for the inconvenience or embarrassment involved in a second trial, but instead focused on the prosecutor's motivation to discourage other defendants from appealing. Id. 417 U. S. at 27-28. Furthermore, the U. S. Supreme Court stressed that regardless of actual motivation, the fear of vindictiveness spawned by a rule permitting prosecutors to "up the ante" after a successful appeal would chill defendants' exercise of the right to appeal. Id. 417 U. S. at 28.

The reasoning of *Blackledge* is inapplicable in the context of jury deadlock. Here, as the State points out, what provided the State an opportunity to "up the ante" was not a successful appeal of a conviction, but rather a mistrial. The appeal of the plea of former jeopardy, had it been successful, would have created no opportunity for enhancement of charges or penalty. A mistrial resulting from an inability of a jury to reach a verdict, especially when entered on the trial court's own motion, is not subject to chilling as is the exercise of the right to appeal. Therefore, no presumption of prosecutorial vindictiveness arises. See *United States v. Whaley*, 830 F2d 1469, 1478-1479 (7th Cir. 1987) (courts have consistently held that no realistic likelihood of vindictiveness is found when a jury is deadlocked and both parties agree that a declaration of mistrial is a necessity); *United States v. Khan*, 787 F2d 28, 33 (1) (2nd Cir. 1986) (addition of charges after mistrial presents no realistic likelihood of vindictiveness and therefore raises no presumption of vindictiveness); *United States v. Mays*, 738 F2d 1188, 1190 (11th Cir. 1984) (no presumption of vindictiveness when, after mistrial, government allegedly threatened defendant with additional charges if he refused to plead guilty; declaration of mistrial did not result from assertion of protected right and was not reasonably likely to engender a vindictive response); *United States v. Ruppel*, 724 F2d 507 (5th Cir. 1984) (declined to presume vindictiveness upon increase in charges after hung jury in absence of evidence of actual retaliation).

Although neither the principles of double jeopardy nor a pre-

---

[8] The rule is analogous to that articulated in *North Carolina v. Pearce*, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) (1969), later limited in *Alabama v. Smith*, 490 U. S. 794 (109 SC 2201, 104 LE2d 865) (1989).

sumption of vindictiveness will bar the State from seeking the death penalty on reindictment, we are unable on the present record to make a determination whether there was actual vindictiveness. Griffin may nevertheless attempt to prove to the trial court that any effort by the State to seek the death penalty following reindictment is motivated by actual vindictiveness. See *United States v. Whaley*, supra, 830 F2d at 1478-1479; *United States v. Mays*, supra, 738 F2d at 1190.

4. Griffin also contends that the trial court erred by ruling that evidence of 29 prior difficulties between Griffin and the victim is admissible. Because our holding in Division 1, supra, leaves no murder indictment pending against him and no notice of intent to seek the death penalty, the unified appeal procedure is not presently applicable to this case. See OCGA § 17-10-35.1 (a). Therefore, we decline to review the trial court's evidentiary rulings thereunder.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent as to Divisions 2 and 3, and Thompson, J., who dissents as to Division 2.*

THOMPSON, Justice, concurring in part and dissenting in part.

I concur fully with Division 3 of the majority opinion. Because the trial court granted a mistrial on its own motion when the jury was unable to reach a verdict, a presumption of prosecutorial vindictiveness does not arise. Thus, the State can reindict defendant for murder and seek the death penalty.

I also concur in Divisions 1 and 4. However, I dissent to Division 2 because the kidnapping charge is procedurally barred.

OCGA § 16-1-7 (b) provides that offenses which are part of the same course of conduct must be tried in a single prosecution if they are within the jurisdiction of a single court and are known to the prosecuting officer when the prosecution is begun. This Code section has always been construed to bar the subsequent prosecution of crimes which could have been tried in a single court when the officer actually handling the proceedings knew of the crimes but prosecuted less than all of them. Until now, it has not mattered that the officer actually handling the proceedings did not have jurisdiction of all of the crimes. The question was whether he knew of all of the crimes and whether they could be prosecuted in a single court. See *Baker v. State*, 257 Ga. 567, 569 (361 SE2d 808) (1987); *Powe v. State*, 257 Ga. 563, 564-565 (361 SE2d 811) (1987).

True, the cases which have considered OCGA § 16-1-7 (b) have applied it vertically, i.e., where all of the crimes could have been tried in the superior court of a county but some of the crimes were prosecuted in an inferior court within the same county. I see no reason why OCGA § 16-1-7 (b) should not also be applied horizontally, i.e., where all of the crimes could have been tried in one county but less than all

of the crimes were prosecuted in another county. After all, the State is a single sovereign and each and every prosecutor acts on behalf of the State. *State v. Sallie*, 206 Ga. App. 732, 736 (427 SE2d 11) (1992).

Acting on behalf of the State, the district attorney of McIntosh County waived the kidnapping charge in this case. The kidnapping and the murder arose out of the same course of conduct and they were within the jurisdiction of a single court — the Superior Court of Thomas County. Nevertheless, with full knowledge of the kidnapping charge, the district attorney of McIntosh County prosecuted defendant for murder. It follows that defendant cannot be reindicted for kidnapping.

FLETCHER, Presiding Justice, dissenting in part.

When the state uses its machinery to put a person to death, it should ensure that the defendant has received a fair process. The majority violates that principle by holding today that the state may add a kidnapping charge and seek the death penalty when reindicting Michael David Griffin in a second county. Because its decision violates due process, double jeopardy, and fundamental fairness, I dissent to Divisions 2 and 3.

1. The Fourteenth Amendment's guarantee of due process prohibits the state from punishing a defendant for exercising his legal rights.[9] Relying on the due process clause, the Supreme Court has created a rebuttable presumption of vindictiveness when a trial judge imposes a more severe sentence on a defendant after a successful appeal.[10] A defendant may show vindictive prosecution in two ways: by producing evidence of actual vindictiveness or showing that there is a sufficient likelihood of vindictiveness to justify a presumption.[11] I would adopt this same analysis in interpreting the Georgia Constitution's due process clause and hold that the state's decision to seek the death penalty in Griffin's retrial presents a realistic likelihood of vindictiveness that the state has failed to rebut.

The totality of the circumstances surrounding the state's decision to seek the death penalty after Griffin's mistrial and appeal demonstrates a reasonable likelihood of vindictiveness. In the first trial, the state sought to have Griffin imprisoned for life, but was unable to convince a majority of jurors even to convict Griffin. After reindicting Griffin, the state was met with a plea of former jeopardy, followed by

---

[9] *United States v. Goodwin*, 457 U. S. 368, 371 (102 SC 2485, 73 LE2d 74) (1982).

[10] *North Carolina v. Pearce*, 395 U. S. 711, 723-726 (89 SC 2072, 23 LE2d 656) (1969); see also *Blackledge v. Perry*, 417 U. S. 21 (94 SC 2098, 40 LE2d 628) (1974) (applying same rule when the defendant received an increased sentence for a felony conviction after appealing a misdemeanor conviction for the same conduct).

[11] *United States v. Marrapese*, 826 F2d 145, 147 (1st Cir.), cert. denied, 484 U. S. 944 (108 SC 331, 98 LE2d 358) (1987).

an appeal of its denial. Unlike a routine pretrial motion, this exercise of Griffin's rights introduced considerable delay in the McIntosh County prosecution. Frustrated, the state tried a new approach. Knowing that in McIntosh County it could do nothing until this Court decided the appeal, the state rushed to indict Griffin in a different county. The state began prosecuting Griffin in Thomas County with at least constructive knowledge that to do so during the pendency of the appeal was improper. Moreover, the state added the kidnapping count, perhaps easier to prove than the murder count, and substantially increased the potential penalty by announcing its intent to seek the death penalty.

The timing of the state's change of course heightens the realistic likelihood of vindictiveness. The state determined to seek the death penalty only after Griffin's first trial ended in a hung jury and he appealed the denial of his double jeopardy claim.

> [O]nce a trial begins — and certainly by the time a conviction has been obtained — it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.[12]

Just as the United States Supreme Court has presumed prosecutorial vindictiveness when the government increases the severity of charges after a conviction and successful appeal, this Court should presume prosecutorial vindictiveness when the state seeks the death penalty following a mistrial and appeal. Under these circumstances, the state's election to seek the enhanced punishment offends due process under the Georgia Constitution.

This conclusion is in accord with the decision of the Supreme Court of Missouri's opinion in *Patterson v. Randall*.[13] In that case, the court was confronted with an issue differing from ours only in that the defendant had successfully appealed a conviction and life sentence before a second prosecutor sought the death penalty. The only change between the two trials affecting the penalty sought was that one prosecutor believed in the death penalty and the other did

---

[12] *United States v. Goodwin*, 457 U. S. at 381; see also *United States v. Doran*, 882 F2d 1511, 1520 (10th Cir. 1989) (adopting totality of circumstances approach in assessing the realistic likelihood of vindictiveness when prosecutor adds enhanced charges following a mistrial and defendant's assertion of right to a speedy trial).

[13] 637 SW2d 16 (Mo. 1982).

not. The court held that the state's explanation fell short of meeting the burden placed on the state. Because the state failed to meet its burden, the court presumed that the state might be retaliating against the accused. Therefore, the court held that the prosecutor's election to seek the death penalty at the second trial violated due process.[14]

The state's attempt to rebut the inference of vindictiveness — by stating that the prosecutors in Thomas County simply reviewed the same evidence as the prosecutors in McIntosh County and came to a different conclusion on the appropriate penalty — is similarly inadequate. The state as a single sovereign may not circumvent the rules of law and principles of fairness by acting in the guise of first one prosecutor and then another.[15] More important, the state fails to identify any new fact developed prior to Griffin's appeal that justifies increasing the penalty sought.[16]

Because the enhanced punishment here is a death sentence, this case is distinguishable from the federal cases on which the majority relies in rejecting the presumption. First, the possibility of execution may have far greater impact on the exercise of rights than the possibility of a longer prison term or a larger fine. Whereas a defendant may feel minimal pressure to plead guilty and forego a jury trial after a first jury is unable to reach a verdict on lesser charges, a defendant newly confronted with even a remote chance of execution may feel forced to plead guilty and accept a life sentence. Second, the decision to seek the death penalty on retrial lacks the logical underpinnings that may justify the addition of new charges. Based on the learning experience of trying the case once without success, the state might reasonably bring new charges as part of a strategy to present its evidence differently in the second trial.[17] In contrast, seeking the death penalty in a second trial for the same crime would not likely contribute to a better presentation of the evidence of that crime. Finally, the state should exercise its discretion to seek the death penalty only in cases in which the evidence of guilt is overwhelming.[18] After Griffin's first trial ended with a majority of jurors prepared to acquit him of the murder, the state could not reasonably anticipate lack of residual

[14] Id. at 19; see also *Murphy v. State*, 453 NE2d 219, 227 (Ind. 1983) (finding presumption of vindictiveness when state sought enhanced penalty at retrial after foregoing its right to seek the penalty in first trial which ended in a mistrial).

[15] *Thigpen v. Roberts*, 468 U. S. 27, 30 (104 SC 2916, 82 LE2d 23) (1984); *Patterson v. Randall*, 637 SW2d at 19.

[16] See *Wasman v. United States*, 468 U. S. 559, 572 (104 SC 3217, 82 LE2d 424) (1984).

[17] *United States v. Mays*, 738 F2d 1188, 1190 (11th Cir. 1984).

[18] *Gregg v. Georgia*, 428 U. S. 153, 225 (96 SC 2909, 49 LE2d 859) (1976) (White, J., concurring) (prosecutors are presumed to base their charging decisions on the strength of their case as well as the likelihood a jury would impose the death penalty).

doubt as to Griffin's guilt on retrial.

Because the state's actions pose a realistic likelihood of vindictiveness and the state has failed to rebut the inference of vindictiveness, the State Constitution's due process clause prohibits it from seeking the death penalty against Griffin on retrial. Therefore, the state should not be able to seek to have Griffin sentenced to death for the murder of Jenny Rhames in any county.

2. The Georgia Criminal Code also bars the kidnapping with bodily injury count of the Thomas County indictment. State law limits multiple prosecutions for crimes arising from the same criminal conduct.[19] OCGA § 16-1-7 (b) requires the state to bring a single prosecution if "the several crimes [1] arising from the same conduct [2] are known to the proper prosecuting officer at the time of commencing the prosecution and [3] are within the jurisdiction of a single court."

All three prongs of the statute are satisfied here. First, the kidnapping clearly arose out of the same course of conduct as the murder.[20] The state alleges that both crimes occurred on the same day in the same county involving the same defendant and victim. Second, the kidnapping was known to the proper prosecuting officer — the McIntosh County district attorney — at the time of the original indictment.[21] The parties stipulated that when Griffin was first indicted for murder in McIntosh County, the district attorney knew about the potential kidnapping charge. At oral argument, the state conceded that the prosecutors of the two counties communicated about the potential charges from the outset. Griffin was not indicted for kidnapping, however, because the state chose to indict him in McIntosh County and the prosecutors believed that venue for the kidnapping charge was proper only in Thomas County. Finally, the kidnapping and murder charges were "within the jurisdiction of a single court," specifically the Superior Court of Thomas County.[22] Therefore, the state waived the kidnapping charge when it chose to prosecute Griffin for murder in McIntosh County.

In reaching its conclusion that Griffin can now be prosecuted for kidnapping, the majority ignores precedent, plain statutory language, and the purpose of § 16-1-7 (b). In *Potts v. State*,[23] we addressed whether § 16-1-7 (b) barred Potts's prosecution for murder in Forsyth County when he had been prosecuted for kidnapping the same victim

---

[19] *State v. Estevez*, 232 Ga. 316, 317 (206 SE2d 475) (1974).

[20] See *McCannon v. State*, 252 Ga. 515 (315 SE2d 413) (1984); see also *Henderson v. State*, 227 Ga. 68, 76 (179 SE2d 76) (1970) (kidnapping and murder counts properly tried together because they were "part of one continuous transaction covering a period of 18 to 20 hours").

[21] See *Baker v. State*, 257 Ga. 567, 568-569 (361 SE2d 808) (1987).

[22] See *Brock v. State*, 146 Ga. App. 78, 80 (245 SE2d 442) (1978).

[23] 241 Ga. 67 (243 SE2d 510) (1978).

in Cobb County. We held that

> it is undisputed that the murder of Michael Priest took place in Forsyth County and that the kidnapping with bodily injury took place in Cobb County. As a matter of law, the two offenses were not within a *single court's jurisdiction*, and could not have been tried together. Therefore, we find no procedural bar to the appellant's subsequent prosecution for the murder of Michael Priest in Forsyth County.[24]

This holding was predicated on the fact that the crimes could not have been tried within a single court's jurisdiction. Conversely, if the kidnapping and murder could have been tried within a single court's jurisdiction, the second prosecution would have been barred. This case presents that logical extension of *Potts*. Before indicting Griffin, the state was aware that it could prosecute him for murder and kidnapping in Thomas County, but the state elected not to do so, instead proceeding with the murder charge alone in McIntosh County. Under the rationale of *Potts*, the state may not now try Griffin for the kidnapping in Thomas County.

Further, the statutory language completely refutes the majority's interpretation of § 16-1-7 (b) as creating "a 'single venue' rule . . . bar[ring] multiple prosecutions only within the same jurisdiction."[25] In a linguistic sleight of hand, the majority has transformed the third phrase, "within the jurisdiction of a single court," to the phrase "within a single venue." But, as we recognized in *Potts*, the phrase, "are within the jurisdiction of a single court," includes crimes that occur within different counties or venues so long as those crimes can be tried in a single court of one of those counties or venues. This plain language is consistent with the fundamental notion, which goes unaddressed in the majority opinion, that each county in the state is not a separate sovereign. The state cannot be carved into separate jurisdictions in evaluating a double jeopardy claim for it is the state, as a single sovereign, that the statute prohibits from seeking successive prosecutions.[26]

Finally, this case illustrates the situation that § 16-1-7 (b) was designed to prevent. As the majority acknowledges, § 16-1-7 (b) prevents an accused from being unduly harassed or threatened by successive criminal prosecutions. Although Griffin could have been tried for murder and kidnapping in Thomas County in a single prosecution,

---

[24] Id. at 77-78. (Emphasis supplied.)

[25] Majority opinion at 118.

[26] *Brown v. Ohio*, 432 U. S. 161, 164, n. 4 (97 SC 2221, 53 LE2d 187) (1977) (prosecutions in two separate counties are acts of a single sovereign under double jeopardy clause).

the state first tried him for murder in McIntosh County. Because both crimes could have been disposed of in one prosecution, the second prosecution is fundamentally unfair, unnecessary, and "unduly harasses" Griffin. The majority fails to recognize that a defendant suffers the same harassment from unnecessary successive prosecutions whether they are in one venue or in multiple jurisdictions. The majority opinion, instead, treats similarly situated defendants disparately, granting protection to a defendant who fortuitously happens to be charged with committing crimes in one county, and denying it to a defendant charged with committing his crimes in multiple counties.

I am authorized to state that Justice Sears joins in this dissent.

SEARS, Justice, dissenting.

Presiding Justice Fletcher presents compelling reasons why the state is barred from trying Griffin for the death penalty and for kidnapping. I, therefore, join his dissent. I write separately to explain an additional reason why the majority errs in holding that the state may now seek the death penalty against Griffin after the state has already tried Griffin for murder.

For the reasons given by Presiding Justice Fletcher, due process bars the state from seeking the death penalty against Griffin. I also conclude that double jeopardy bars the state from seeking the death penalty. In holding that double jeopardy bars a state from seeking the death penalty on a retrial when the first jury had "acquitted" the defendant of the grounds necessary to impose the death penalty, the United States Supreme Court found that the same double jeopardy principles that applied to successive prosecutions for an offense applied to successive prosecutions for the death penalty.

> The "embarrassment, expense and ordeal" and the "anxiety and insecurity" faced by a defendant at the penalty phase of a . . . capital murder trial are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial.[27]

The United States Supreme Court in *Bullington* was thus effectively equating the death penalty with an offense for double jeopardy purposes. Similarly, I would equate the two for purposes of our procedural double jeopardy statute. OCGA § 16-1-7 (b). I would thus hold that because the state chose to try Griffin for murder without seeking the death penalty, § 16-1-7 (b) bars the state from putting Griffin through the anxiety and insecurity of a death penalty trial after the state has put him through the expense and anxiety of a first trial in

---

[27] *Bullington v. Missouri*, 451 U. S. 430, 445 (101 SC 1852, 68 LE2d 270) (1981).

which the state likely gained tactical advantages.

Decided December 4, 1995 —
Reconsideration denied December 20, 1995.

*Kirbo & McCalley, Thomas L. Kirbo III, Jon V. Forehand,* for appellant.

*H. Lamar Cole, District Attorney, James E. Hardy, Mark E. Mitchell, Assistant District Attorneys,* for appellee.