

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. MATTHEW     )     *Opinion issued November 3, 2020*
BECKER, FRANKLIN COUNTY     )
PROSECUTING ATTORNEY,     )
          )
      Relator,     )
          )
v.     )     No.  SC98416
          )
THE HONORABLE GAEL D. WOOD,     )
          )
      Respondent.     )

### ORIGINAL PROCEEDING IN PROHIBITION

Franklin County Prosecuting Attorney, Matthew Becker, petitioned for a writ to prohibit the circuit court from enforcing an order requiring him and an associate prosecuting attorney, Matthew Houston, to appear and provide sworn testimony under oath at a pretrial motion hearing.

Because the defendant, Aaron Hodges, failed to allege sufficient facts to support a presumption of prosecutorial vindictiveness and the circuit court's order will cause irreparable harm by requiring Becker and Houston to divulge privileged work product, this Court makes its preliminary writ of prohibition permanent.

**Factual Background and Procedural Background**

A grand jury indicted Hodges on two counts of first-degree murder and two counts of armed criminal action. At the time of the indictment, Robert Parks was the elected prosecutor for Franklin County. Hodges filed a jury trial waiver on January 11, 2016, and the case was set for guilty plea on February 23, 2016. Hodges' case has been continued several times, and on October 24, 2016, he withdrew his jury trial waiver. During this time, Hodges and the State engaged in plea negotiations.

Almost two years later, on June 15, 2018, Hodges filed notice he intended to proceed to trial, relying on a defense of not guilty by reason of mental disease or defect. Shortly thereafter, on June 21, 2018, the State withdrew all outstanding plea offers. Prosecuting Attorney Parks then retired and Franklin County elected Becker Prosecuting Attorney. Becker assumed office in January 2019. The circuit court set the case for jury trial for September 9, 2019. The State filed a notice of intent to seek the death penalty on July 24, 2019, seven weeks before the trial date. Hodges then filed a motion to strike the State's intent to seek the death penalty, alleging, *inter alia*, prosecutorial vindictiveness.

Hodges filed a motion to endorse prosecuting attorneys Becker and Houston as witnesses at the hearing regarding the motion to strike. The circuit court entered an order requiring Becker and Houston to appear and provide sworn testimony regarding Hodges' motion to strike. Becker petitioned for a writ of prohibition, which the court of appeals denied. Becker then sought a writ of prohibition from this Court to prevent the circuit court from ordering him and Houston to provide sworn testimony. This Court issued a preliminary writ of prohibition.

2

**Jurisdiction and Standard of Review**

This Court has the authority to issue and determine original remedial writs. Mo. Const. art. V, § 4.1.

> A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Anheuser-Busch, LLC v. Moriarty*, 589 S.W.3d 567, 570 (Mo. banc 2019).

Further, a writ of prohibition is appropriate to prevent the disclosure of privileged work product. *State ex rel. Rogers v. Cohen*, 262 S.W.3d 648, 650 (Mo. banc 2008).[1]

**Analysis**

The limited issue in this case is whether defense counsel can require the elected prosecuting attorney to testify at a hearing regarding his rationale for pursuing a particular sentence.[2] Becker claims the circuit court's order requiring him and Houston to testify will cause irreparable harm because it necessarily requires them to divulge privileged work product. Further, he argues the State need not respond to an allegation of prosecutorial vindictiveness until a presumption of vindictiveness has been established and Hodges' allegations, as pleaded, do not create such a presumption.

---

[1] Additionally, "[w]hen a party has been directed to produce privileged information, a writ of prohibition is an appropriate remedy because an appeal cannot remedy the improper disclosure." *State ex rel. Malashock v. Jamison*, 502 S.W.3d 618, 619 (Mo. banc 2016).

[2] While "[a] prosecuting attorney is not incompetent to be a witness," *State v. Hayes*, 473 S.W.2d 688, 691 (Mo. 1971), a prosecutor's ability to testify "is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case." *Id.* (internal quotations omitted). A claim of prosecutorial vindictiveness does not fit within that category of case.

3

### *Sentencing Rationale Constitutes Work Product*

"An attorney's opinions, theories and conclusions are work product and are therefore privileged." *State v. Antwine*, 743 S.W.2d 51, 67 (Mo. banc 1987). The work product doctrine protects both tangible and intangible work product. *Cohen*, 262 S.W.3d at 654. Intangible work product includes an attorney's mental impressions, conclusions, opinions, and legal theories. *Id*.

A prosecuting attorney's rationale for seeking a particular punishment based upon the facts of a specific case are necessarily mental impressions and conclusions and are, therefore, intangible work product.[3] As intangible work product, Becker's rationale for seeking the death penalty after consideration of Hodges' specific case is privileged. Thus, the State would suffer irreparable harm if Becker and Houston are compelled to testify regarding this information.

Still, if the record of the case supports a presumption of prosecutorial vindictiveness or a criminal defendant presents persuasive objective evidence that the prosecuting attorney acted with the sole intention of punishing the defendant for exercising a constitutional right, the burden to disprove the charge shifts to the State. Because the allegations in the motion to strike, even if true, do not create a presumption of prosecutorial vindictiveness and Hodges has not, at this point, presented the requisite objective evidence of prosecutorial

---

[3] *See United States v. Nobles*, 422 U.S. 225, 238 (1975) (recognizing that, "[a]lthough the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital").

vindictiveness, the issuance of this writ is necessary to prevent the circuit court from compelling Becker and Houston to testify at the hearing regarding the motion to strike.[4]

### *No Presumption of Prosecutorial Vindictiveness*

In his motion to strike the State's intent to seek the death penalty, Hodges alleges the State acted vindictively to punish him for proceeding to jury trial on a defense of not guilty by reason of mental disease or defect by (1) filing its intent to seek the death penalty; and (2) rescinding all existing plea offers. Hodges contends these two factual circumstances, as pleaded, establish a presumption of vindictiveness. But, the facts and circumstances of this case as alleged do not create a presumption of prosecutorial vindictiveness, and the State cannot be compelled to testify regarding its reasons for seeking the death penalty.

A prosecuting attorney possesses broad, almost unfettered discretion in deciding what charge and what punishment to seek. *State ex rel. Gardner v. Boyer*, 561 S.W.3d 389, 398 (Mo. banc 2018). The due process clause of the Fourteenth Amendment, however, prevents a prosecuting attorney from acting vindictively to punish a criminal defendant for exercising a right. *Blackledge v. Perry*, 417 U.S. 21, 28 (1974). A presumption of vindictiveness is established when "the facts show a realistic likelihood of

---

[4] In *United States v. Goodwin*, the Supreme Court found a reasonable likelihood of vindictiveness did not exist even though a new, more serious charge had been filed because the change occurred in a pretrial setting and a prosecutor should be able to exercise his discretion to determine the extent of societal interest in the prosecution. 457 U.S. 368, 386 (1982). The Supreme Court additionally found, "The mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id*. at 382-83.

vindictiveness in the prosecutor's augmentation of charges." *State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999). "Two factors are weighed: (1) the prosecutor's stake in deterring the exercise of some right, and (2) the prosecutor's conduct." *Id*. Only after vindictiveness has been established, either through the presumption or by objective evidence, is the State burdened with the task of defending the charge through objective, on-the-record explanations of the State's rationale. *Id.*

### *No Realistic Likelihood of Vindictiveness Exists*

Hodges contends the State vindictively rescinded its plea offers and augmented the charge against him by seeking the death penalty after he decided to proceed to jury trial on the theory of not guilty by reason of mental disease or defect. Contrary to Hodges' argument, this Court has repeatedly concluded first-degree murder and capital murder are not different charges. *See, e.g., State v. Smith*, 781 S.W.2d 761, 769 (Mo. banc 1989) ("'[C]apital murder' is not a distinct crime under the Missouri statutory scheme."); *State v. Holland*, 653 S.W.2d 670, 672 (Mo. banc 1983); *State v. Baker*, 636 S.W.2d 902, 903 (Mo. banc 1982). Therefore, when the State charges a defendant with first-degree murder, the State does not augment the charge or add a new charge when it makes the decision to seek the death penalty. *See* § 565.005; § 565.020; § 565.030.[5] Because the State did not augment or change the initial charge of first-degree murder, Hodges' allegations do not create a presumption of prosecutorial vindictiveness.

---

[5] All statutory citations are to RSMo 2016 unless otherwise indicated.

This Court must weigh two factors to determine whether a realistic likelihood of prosecutorial vindictiveness exists: (1) the prosecutor's stake in deterring the exercise of the right being asserted, and (2) the prosecutor's actual conduct. *Id*. Once established, the presumption of vindictiveness may be "overcome by objective information justifying the increased sentence or charge." *State ex rel. Patterson v. Randall*, 637 S.W.2d 16, 18 (Mo. banc 1982) (*citing United States v. Goodwin*, 457 U.S. 368, 376 n.8 (1982)).

A prosecutor will likely always have some stake in deterring a defendant from asserting his or her right to trial by jury—e.g., lowering the risk of acquittal.[6] The real issue for Hodges in this case lies in the State's actual conduct, which fails to establish a reasonable likelihood of vindictiveness. Typically, the State's conduct supports a presumption of vindictiveness when there has been a successful appeal or grant of retrial, and the State responds by seeking an enhanced or new charge. *See, e.g.*, *State v. Cayson*, 747 S.W.2d 155, 157 (Mo. App. 1987) (finding a presumption of vindictiveness existed when defendant was granted a new trial and the State dismissed the second-degree robbery charge and obtained indictment for first-degree robbery); *State v. Potts*, 181 S.W.3d 228, 236-237 (Mo. App. 2005) (finding a presumption existed when the State filed a greater charge of possession of a controlled substance with intent to distribute following the grant of defendant's request for mistrial).

---

[6] *See Goodwin*, 457 U.S. at 382 (explaining "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution" and "[a]n initial decision should not freeze future conduct").

A presumption of vindictiveness is rarely found at the pretrial stage.[7] At this stage, a prosecutor's assessment of the proper extent of prosecution may not have crystalized, and the prosecutor simply may come to realize that information possessed by the State has a broader significance. *See Goodwin*, 457 U.S. at 381. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. *Id*.

The allegations in the present case are clearly distinguishable from cases in which the circumstances establish a reasonable likelihood of vindictiveness. First, there has been no successful appeal or grant of retrial in this case. Additionally, because first-degree murder and capital murder are not different charges, the State did not augment an existing charge nor add a separate charge.

Here, the State obtained an indictment against Hodges for first-degree murder, which carries with it the statutory possibility of death. *See* § 565.020 ("[T]he punishment [for first-degree murder] shall be either death or imprisonment for life without eligibility

---

[7] *See e.g.*, *Goodwin*, 457 U.S. at 381-382 (finding no presumption was warranted in a case in which defendant was indicted and convicted of a felony charge arising from the same incident as previously pending misdemeanor charges after defendant decided not to plead guilty and proceed to jury trial); *Gardener*, 8 S.W.3d at 70 (finding no presumption when defendant's refusal to waive defense for involuntary manslaughter charge resulted in a charge of second-degree murder); *State v. Buchli*, 152 S.W.3d 289, 309 (Mo. App. 2004) (finding the presumption did not apply to a situation in which higher charges were filed after the defendant had moved to suppress evidence and to dismiss because of a violation of his right to a speedy trial); *State v. Miller*, 981 S.W.2d 623, 629 (Mo. App. 1998) (finding no presumption when the prosecutor added a prior and persistent offender charge after the defendant refused a plea and asserted his right to trial), *overruled on other grounds State v. Barnett*, 577 S.W.3d 124, 132 n.10 (Mo. banc 2019); *State v. Molinett*, 876 S.W.2d 806, 808 (Mo. App. 1994); *State v. Massey*, 763 S.W.2d 181, 183 (Mo. App. 1988) (presumption does not apply when higher charges were added to the information after the defendant was released on bail).

for probation or parole."). Accordingly, Hodges was subject to death the day he was indicted for first-degree murder. Becker's predecessor engaged in plea negotiations with Hodges, but, importantly, the State did not waive the death penalty at any point. Before a plea agreement had been made, Becker's predecessor retired, and all outstanding offers were withdrawn. Franklin County then elected Becker as the new prosecuting attorney and, after consideration of Hodges' case and plea negotiations were unsuccessful, Becker provided notice of the State's intent to seek the death penalty in accordance with § 565.020. A prosecuting attorney certainly possesses the discretion to seek any statutorily authorized sentence seven weeks before trial is set to begin.

Further, the State does not act vindictively by rescinding its outstanding plea offers when the accused is free to accept or reject the State's offer. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

Still, Hodges maintains even if he is not entitled to a presumption of vindictiveness, he has alleged the necessary evidence showing the State acted solely to punish him for exercising his right to jury trial. Specifically, Hodges alleges the State vindictively failed to file its intent to seek the death penalty within a reasonable time as directed by § 565.005.

This Court has declined to find unreasonableness in the State's intent to seek the death penalty when a defendant fails to specifically explain how alleged unreasonableness has prejudiced him. *See State v. McMillin*, 783 S.W.2d 82, 102 (Mo. banc 1990) (holding the defendant did not establish unreasonableness by claiming he needed time to "prepare a defense" against the aggravating circumstances alleged by the State's intent to seek the

9

death penalty), *abrogated on other grounds by Morgan v. Illinois*, 504 U.S. 719, 725 n.4 (1992).

Here, Hodges argues the State's alleged unreasonableness has caused undue delay without just cause and this has hindered his ability to defend against a charge of capital murder. The bare assertion that the State's action has prejudiced Hodges' ability to defend against capital murder does not establish a presumption of vindictiveness, especially when nearly three years had passed since Hodges was charged with capital murder before he raised the defense of not guilty by reason of mental disease or defect.

### *Objective Evidence of Vindictiveness*

In holding this case does not merit a presumption of vindictiveness, this Court does not foreclose the possibility that prosecutorial vindictiveness may still be found after a hearing on Hodges' motion to strike. If Hodges, during the hearing on his motion, presents objective evidence supporting prosecutorial vindictiveness, the circuit court could properly require the State to choose between rebutting the claim of prosecutorial vindictiveness on the record or permitting the court to sustain the motion to strike in this case.[8]

---

[8] As a lawyer, a prosecuting attorney has a duty of candor towards the circuit court. Rule 4-3.3(a). This duty sufficiently safeguards the truthfulness of the State's on-the-record statement. *See Buchli*, 152 S.W.3d at 309 (holding, "[o]nly if [the defendant shows that a realistic likelihood of vindictiveness exists] does the burden shift to the prosecutor to show, by objective on-the-record explanations, the rationale for the State's actions"); *Area 16 Public Defender Office III v. Jackson Cty. Prosecuting Attorney's Office*, WD82962, 2020 WL 3067596, at *3 n.10 (June 9, 2020) (recognizing prosecutors—like public defenders—"are officers of the court whose statements would presumably not change based on whether they were sworn or not").

## Conclusion

For the foregoing reasons, this Court's preliminary writ of prohibition is made permanent.

_____
Zel M. Fischer, Judge

Wilson, Powell, and Breckenridge, JJ., concur;
Russell, J., dissents in separate opinion filed;
Draper, C.J., and Stith, J., concur in opinion of Russell, J.

11



# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. MATTHEW BECKER,          )
FRANKLIN COUNTY PROSECUTING       )
ATTORNEY,                                             )
                                                              )
        Relator,                                     )
                                                              )   No. SC98416
v.                                                           )
                                                              )
THE HONORABLE GAEL D. WOOD,     )
                                                              )
        Respondent.                             )

## DISSENTING OPINION

I respectfully dissent. The State seeks a writ of prohibition preventing the circuit court from ordering Matthew Becker and Matthew Houston to provide sworn testimony at a pretrial hearing. The circuit court has discretion to allow the testimony and has not abused its discretion in this matter. The State will not suffer irreparable harm. The preliminary writ of prohibition should be quashed.

## Background

The principal opinion's recitation of the factual and procedural background downplays the State's eleventh-hour filing of its notice of intent to seek the death penalty. In June 2015, a grand jury indicted Aaron Hodges on two counts of first-degree murder

and two counts of armed criminal action. Three years later, in June 2018, Hodges filed a notice of intent to rely on the defense of mental disease or defect. The circuit court set the case for a jury trial to commence four years after the charges were filed. Then, less than two months before trial, Becker, who had been in office for seven months, filed a notice of intent to seek the death penalty.

## Standard of Review

Prohibition is "an extraordinary remedy" and is to be employed "with great caution and forbearance and only in cases of extreme necessity." *State ex rel. Douglas Toyota III, Inc. v. Keeter*, 804 S.W.2d 750, 752 (Mo. banc 1991). A writ of prohibition may issue in three circumstances:

> (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) [when] a party may suffer irreparable harm if relief is not granted.

*State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). "Prohibition is not generally intended as a substitute for correction of alleged or anticipated judicial errors and it cannot be used to adjudicate grievances that may be adequately redressed in the ordinary course of judicial proceedings." *Keeter*, 804 S.W.2d at 752.

## Analysis

The resolution of this writ turns on the circuit court's discretion to call the prosecutors as witnesses and ability to conduct a pretrial hearing. Because of the belated filing of the notice of intent to seek the death penalty, the circuit court rightly exercised its discretion to permit Hodges to call Becker and Houston for testimony, in limited

2

scope, relevant to the reason for the delay. I also part from the principal opinion in its analysis of whether the charge here was "augmented." Further, contrary to the principal opinion, I find the State is not subject to the risk of irreparable harm and do not anticipate the very experienced circuit court judge would make incorrect rulings with regard to work product during the hearing.

### I. *Pursuant to the circuit court's discretion, the testimony should be permitted*

The principal opinion focuses on one manner of establishing prosecutorial vindictiveness and relegates the other to a single-paragraph afterthought. There are two methods to prove prosecutorial vindictiveness:

> First, if a realistic likelihood of vindictiveness is found, a presumption is erected in defendant's favor which the prosecutor must rebut. This presumption may operate in the absence of any evidence of vindictive motive. Second, a defendant can make a case for prosecutorial vindictiveness without the aid of the . . . presumption if he can prove, through objective evidence[,] that the sole purpose of the State's action was to penalize him for exercising some right.

*State v. Potts*, 181 S.W.3d 228, 233-34 (Mo. App. 2005) (citations and footnote omitted). Under the first method, the realistic likelihood "is judged by weighing two factors: 1) the prosecutor's stake in deterring the exercise of the right being asserted, and 2) the prosecutor's actual conduct." *Id.* at 233.

Regarding the first method to prove prosecutorial vindictiveness, Hodges' filings before this Court show he acknowledges that, at this point, there is not a presumption of vindictiveness in this case. In other words, there has not yet been a finding of a realistic likelihood of vindictiveness. Without a presumption erected in Hodges' favor, there is not a burden on the State to rebut the allegation of prosecutorial vindictiveness.

3

As to the second method to prove prosecutorial vindictiveness, preventing Hodges from calling Becker and Houston would eliminate an opportunity to discover potential objective evidence of vindictiveness. Hodges seeks testimony from the prosecutors as to the reason for the delay in filing the notice of intent to seek the death penalty. The reason for the delay is not something that can be gleaned from available objective evidence such as referencing a docket sheet. Further, a prosecutor's requisite candor toward the circuit court does not carry the same significance as testimony given directly after an oath or affirmation. It was not an abuse of the circuit court's discretion to require testimony from the State on a narrow issue—the reason for the delay in seeking the death penalty.[1]

Hodges and Becker both recognize that the "peculiar and unusual circumstances" of a case may require a prosecutor to testify. *State v. Hayes*, 473 S.W.2d 688, 691 (Mo. 1971). Recognizing the discretion given to a circuit court judge, the circuit court could reasonably find the filing of a notice of intent to seek the death penalty, four years after a

---

[1] The principal opinion dismisses Hodges' argument that the State failed to file its notice of intent to seek the death penalty within a reasonable time as directed by section 565.005, RSMo 2016. The principal opinion's citation to *McMillin* is inapposite. In that case, the appellant claimed he needed time to "prepare a defense" against statutory aggravating circumstances that were given to him 25 days before trial. *State v. McMillin*, 783 S.W.2d 82, 102 (Mo. banc 1990), *abrogated by Morgan v. Illinois*, 504 U.S. 719 (1992). But, the defendant in that case was aware the prosecutor intended to seek the death penalty. *Id.* ("Appellant does not claim he was unaware that the prosecutor intended to seek the death penalty; the record in this case would not legitimately permit him to do so."). Hodges argued before the circuit court, in his response to the State's suggestions in opposition to his motion to strike the State's notice of intent to seek the death penalty, that the State had affirmatively led him to believe that it would not seek the death penalty. There was a significant amount of time—more than four years—before the State notified Hodges it intended to pursue the death penalty. This late notice prejudiced Hodges' ability to prepare for a trial where the death sentence, the ultimate penalty, is now possible.

4

case was filed and less than two months prior to trial, was peculiar and unusual.[2] *Hayes* instructs, "A prosecuting attorney is not incompetent to be a witness, and the trial court may exercise discretion in determining to what extent and as to what matters he may be permitted to testify." *Id.* (citations omitted). As a result, the circuit court should be able to exercise discretion in determining whether Becker and Houston may testify to the reason for the delay in filing the notice of intent to seek the death penalty.

Any concern that permitting the prosecutors to be called in this case would somehow open the door to prosecutors being questioned about all charging decisions in the future is an overblown and unlikely outcome. Provided that some peculiar and unusual circumstances are presented to the judge to warrant the testimony, the circuit court judge, in his or her discretion, can require the testimony. Prosecutors are insulated from questioning by two layers of protection. First, there must actually be some peculiar and unusual circumstances. Second, the circuit court exercises its discretion to determine if those circumstances rise to a level warranting the testimony. Of course, it should not and would not be the case that a prosecutor is called to give testimony about every change in punishment decisions over the course of the pretrial litigation process, but it should be possible in highly unique circumstances such as these.

---

[2] The circuit court judge was assigned the case in June 2015 after the grand jury indictment was filed, and after a month's hiatus following his retirement, he was again assigned the case as a senior judge. The circuit court judge would have been familiar with the proceedings at the time the notice of intent to seek the death penalty was filed in July 2019.

***II. A court may find prosecutorial vindictiveness absent new or enhanced charges***

The principal opinion holds that the State does not "augment" or "change" the initial charge of first-degree murder when it makes the decision to seek the death penalty. This is an endorsement of Becker's argument that, as a matter of law, prosecutorial vindictiveness cannot be found where the prosecutor did not issue new or enhanced charges. *See State v. Murray*, 925 S.W.2d 492, 493 (Mo. App. 1996) ("[T]o prove prosecutorial vindictiveness in the pretrial context, the defendant must show that the charge against him was *augmented* to penalize him for exercising a legal right and that the charge cannot be justified as a proper exercise of prosecutorial discretion." (emphasis added)). The principal opinion apparently limits its holding to the method of proving prosecutorial vindictiveness through a realistic likelihood of vindictiveness because it leaves open the possibility that prosecutorial vindictiveness, through a penalty increase, may still be found based on objective evidence.

This Court has previously found an increase in penalty sufficient for a defendant to show a realistic likelihood of prosecutorial vindictiveness, albeit after an appeal. *State ex rel. Patterson v. Randall*, 637 S.W.2d 16, 18 (Mo. banc 1982). In *Patterson*, the defendant was convicted of capital murder after a trial in which the State chose not to seek the death penalty. *Id.* at 17. The defendant was sentenced to life imprisonment, but an appeal resulted in a new trial. *Id.* On remand, the State, now represented by a new prosecutor who favorably viewed the death penalty, filed its notice of intent to seek the death penalty. *Id.* This Court held:

> Because due process of law prohibits the State from responding to a person's invocation of his right of appeal by bringing a more serious charge against a defendant prior to his new trial, *the same is necessarily true of subjecting the defendant to a more serious penalty* subsequent to his successful appeal.

*Id.* at 18 (emphasis added). Applied to Hodges, although there was no change in the charge, the change in potential penalty was profound; the penalty of death is unlike any other legal consequence. If this penalty increase was retaliatory, a finding of prosecutorial vindictiveness is appropriate.[3]

Through either method of proving prosecutorial vindictiveness, a change in penalty should, under appropriate circumstances, be able to constitute an "augmented" charge. This Court should not hold that vindictiveness can never be found absent new or enhanced charges. Rather, the determination of prosecutorial vindictiveness should always turn on the particular facts of the case. Here, if the prosecutor's actual conduct

---

[3] The principal opinion places an emphasis on not finding a reasonable likelihood of vindictiveness in the pretrial setting, citing *United States v. Goodwin*, 457 U.S. 368 (1982). In *Goodwin*, the Supreme Court, relying on the legitimacy of plea bargaining and a prosecutor's discretion, found a presumption of vindictiveness was not warranted in that particular case. *Id.* at 378-83. The import of *Goodwin* is that, contrary to what the United States Court of Appeals for the Fourth Circuit had found below, there should not be "an *inflexible* presumption of prosecutorial vindictiveness in a pretrial setting." *Id.* at 381 (emphasis added). *Goodwin* does not rule that a presumption of vindictiveness is unavailable in the pretrial setting.

I acknowledge the broad discretion owed to prosecutors in pretrial matters and that, "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). In the case at hand, the issue is more than plea bargaining. Hodges contends his filing of a notice of intent to rely on a defense of mental disease or defect prompted the State's penalty increase. Hodges was permitted to rely on this defense. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Goodwin*, 457 U.S. at 372 (*quoting Bordenkircher*, 434 U.S. at 363). A circuit court is permitted to determine if the prosecutor's stake in deterring the exercise of that defense and the prosecutor's conduct weigh toward a realistic likelihood of vindictiveness.

7

weighed heavily in creating a realistic likelihood of vindictiveness or if there was objective evidence that the State filed the notice of intent to seek the death penalty solely because Hodges filed his notice of intent to rely on a defense of mental disease or defect, a finding of prosecutorial vindictiveness would be appropriate. I make no conclusion about whether, after testimony from Becker and Houston, prosecutorial vindictiveness would be found in this case, but the analysis of the principal opinion categorically forecloses such a conclusion without hearing evidence.

### III.  *There is no risk of irreparable harm to the State*

There is no risk of irreparable harm to the State, and this is not a case of extreme necessity in which a writ of prohibition should issue. The principal opinion posits the State would suffer irreparable harm if the prosecutors were compelled to testify. This is not true for two reasons. First, Becker has *already* provided an outline of his rationale for seeking the death penalty—as a newly elected prosecutor, he reviewed the case, met with the victims, and reevaluated the aggravating circumstances. Becker provided this rationale while on the record but not in response to questioning. Presumably, Hodges' questions would explore these topics, in the limited scope permissible, and inquire into the timeline of the review process. Second, the circuit court's order requiring Becker and Houston to provide sworn testimony was confined to the scope of Hodges' motion to strike. The subject matter of the motion to strike was that "the defendant has a right to call the prosecutor to testify as to the reason for the delay in seeking the death penalty and why he is prosecuting the defendant to establish vindictiveness." The testimony would be subject to the court's rulings on any objections made, including objections

8

involving work product. The risk is further minimized as the circuit court stated on the record that "the realm of inquiry would be extremely limited. Obviously, it could not involve work product or trial strategy or that sort of thing."

This Court should not presume the circuit court judge, a long-serving jurist, will err in allowing impermissible testimony. A writ of prohibition should not act "as a substitute for correction of *alleged* or *anticipated* judicial errors and it cannot be used to adjudicate grievances that may be adequately redressed in the ordinary course of judicial proceedings." *Keeter*, 804 S.W.2d at 752 (emphasis added). This Court should not make the premature determination that an experienced circuit court judge will incorrectly require divulgence of privileged work product.

## Conclusion

I do not find this case to be one of extreme necessity requiring this Court to issue the extraordinary remedy of a writ of prohibition. The circuit court has discretion to allow the testimony and has not abused its discretion in this matter. The State will not suffer irreparable harm. For these reasons, the preliminary writ of prohibition should be quashed.

_____
Mary R. Russell, Judge

9